GIBSON, DUNN & CRUTCHER LLP
DANIEL W. NELSON (*Pro Hac Vice*)
DNelson@gibsondunn.com
ANDREW S. TULUMELLO (State Bar No. 196484)
ATulumello@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 955-8500
Facsimile: (202) 530-4238

CHRISTOPHER CHORBA (State Bar No. 216692)
CChorba@gibsondunn.com
GILBERT LEE (State Bar No. 267247)
GLee@gibsondunn.com
JENNIFER E. ROSENBERG (State Bar No. 275496)
JRosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendants
SOUTH BEACH BEVERAGE
COMPANY, INC.; PEPSICO, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| CHARLES HAIRSTON, | Case No. LA CV 12-01429 JFW (DTB) |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| SOUTH BEACH BEVERAGE COMPANY, INC.; PEPSICO, INC., | **REGULATORY APPENDIX FILED CONCURRENTLY UNDER SEPARATE COVER** |
| Defendants. | |
| | Hearing<br>Date: May 21, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 16<br>Judge: The Honorable John F. Walter |
| | Action Filed: February 21, 2012 |
| | Trial Date: Not Set |

Gibson, Dunn &
Crutcher LLP

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 21, 2012, at 1:30 p.m., or as soon thereafter as they may be heard, in Courtroom 16, of this Court, located at 312 N. Spring Street, Los Angeles, California, 90012, Defendants South Beach Beverage Company, Inc. and PepsiCo, Inc. will and hereby do move this Court for an order pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) dismissing all of the claims contained in the First Amended Complaint ("FAC") filed on April 12, 2012.

This Motion is based on the fact that federal law preempts several of Plaintiff's challenges to Defendants' product labels, thereby rendering the FAC untenable.  In addition, the FAC fails to state a claim upon which relief can be granted under any of the legal theories offered by Plaintiff (alleged violations of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), the False Advertising Law (*id.* § 17500), the Consumers Legal Remedies Act (Cal. Civ. Code § 1750), and the Magnuson-Moss Warranty Act (15 U.S.C. § 2301).  For the reasons set forth in greater detail in the accompanying Memorandum of Points and Authorities, Plaintiff fails to allege plausible and/or particularized claims because Defendants' products fully and accurately disclosed all ingredients in compliance with federal regulations, and there was no actual or potential deception or injury.

Defendants make this Motion following the conference of counsel pursuant to L.R. 7-3, which took place on March 22, 2012.  Despite their good faith efforts, the parties were unable to resolve the issues raised in this Motion.  This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Regulatory Appendix, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

DATED:  April 19, 2012                        GIBSON, DUNN & CRUTCHER LLP

By: _____/s/_____
                    Daniel W. Nelson

Attorneys for Defendants South Beach
Beverage Company, Inc. and PepsiCo, Inc.

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................1

II.   SUMMARY OF ALLEGED FACTS .................................................2

III.   THE LEGAL STANDARDS GOVERNING THIS MOTION ...................6

IV.   FEDERAL LAW EXPRESSLY PREEMPTS PLAINTIFF'S CHALLENGES TO THE SOBE BEVERAGE LABELS............................7

   A.   Plaintiff's Challenges To The Use Of Fruit Names To Describe Flavors Are Preempted And Must Be Dismissed ................................8

   B.   Plaintiff's Attempt To Require Defendants To Label Added Vitamins Differently Conflicts With Federal Law And Is Preempted..........................................................................10

V.   PLAINTIFF'S CONSUMER PROTECTION AND FALSE ADVERTISING CLAIMS FAIL AS A MATTER OF LAW ...................13

   A.   Defendants' Entire Label—And Not Just The Selective Excerpts Upon Which Plaintiff Relies—Is Not Deceptive...............................13

   B.   Plaintiff Cannot Bring Claims Regarding A Product He Never Purchased .........................................................................18

   C.   Plaintiff Has Not Pleaded His Claims With The Requisite Particularity ......................................................................18

   D.   Plaintiff Cannot Establish "Unlawful" Or "Unfair" Conduct, Or Any Violation Of The CLRA................................................20

VI.   PLAINTIFF FAILS TO STATE A FEDERAL WARRANTY ACT CLAIM ........................................................................22

VII.   CONCLUSION ..................................................................24

Gibson, Dunn & Crutcher LLP

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Abraham v. Volkswagen of Am., Inc.,*
795 F.2d 238 (2d Cir. 1986)....................................................................24

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).............................6, 14

*Astiana v. Ben & Jerry's Homemade, Inc.,*
No. 10-4387, 2011 U.S. Dist. LEXIS 57348,
(N.D. Cal. May 26, 2011) ........................................................................8

*AT&T Mobility LLC v. Concepcion,*
131 S. Ct. 1740, L. Ed. 2d 742 (2011) ......................................................22

*Balsam v. Trancos, Inc.,*
203 Cal. App. 4th 1083, 138 Cal. Rptr. 3d 108 (2012).....................................19

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).............................6, 14

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009).....................................................................18

*Briseno v. ConAgra Foods, Inc.,*
No. 11-05379-MMM, 2011 U.S. Dist. LEXIS 154750
(C.D. Cal. Nov. 23, 2011) ........................................................................20

*Buckman Co. v. Plaintiffs' Legal Comm.,*
531 U.S. 341, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001) ...............................7

*Carrea v. Dreyer's Grand Ice Cream,*
No. 10-01044, 2011 U.S. Dist. LEXIS 6371(N.D. Cal. Jan. 10, 2011),
*aff'd,* No. 11-15263, 2012 U.S. App. LEXIS 6851 (9th Cir. Apr. 5,
2012)................................................................................................14, 18

*Churchill Vill., L.L.C. v. G.E. Co.,*
169 F. Supp. 2d 1119 (N.D. Cal. 2000) ......................................................21

*Dvora v. Gen. Mills, Inc.,*
No. 11-1074-GHW, 2011 U.S. Dist. LEXIS 55513
(C.D. Cal. May 16, 2011)......................................................................9, 10

*Edwards v. Marin Park, Inc.,*
356 F.3d 1058 (9th Cir. 2004).....................................................................7

*Fraker v. KFC Corp.,*
No. 06-01284, 2007 U.S. Dist. LEXIS 32041
(S.D. Cal. Apr. 30, 2007) .....................................................................20, 21

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995)............................................................................15

*Henderson v. Gruma Corp.*,
  No. 10-04173-AHM, 2011 U.S. Dist. LEXIS 41077
  (C.D. Cal. Apr. 11, 2011)............................................................................22

*Hill v. Roll Int'l Corp.*,
  195 Cal. App. 4th 1295, 128 Cal. Rptr. 3d 109 (2011)....................................16

*In re Farm Raised Salmon Cases*,
  42 Cal. 4th 1077, 72 Cal. Rptr. 3d 112 (2008)................................................20

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994).........................................................................19

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*,
  MDL 1703, 2006 U.S. Dist. LEXIS 100903
  (N.D. Ill. May 17, 2006) ...............................................................................23

*In re Tobacco II Cases*,
  46 Cal. 4th 298, 93 Cal. Rptr. 3d 559 (2009)..................................................19

*Johns v. Bayer Corp.*,
  No. 09-1935, 2010 U.S. Dist. LEXIS 10926,
  (S.D. Cal. Feb. 9, 2010) ...............................................................................18

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)...........................................................6, 18, 19

*Kelley v. Microsoft Corp.*,
  No. 07-0475, 2007 U.S. Dist. LEXIS 66721,
  (W.D. Wash. Sept. 10, 2007) .......................................................................23

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (2011)..........................................16, 18

*Laster v. T-Mobile USA, Inc.*,
  No. 05-1167, 2008 U.S. Dist. LEXIS 103712
  (S.D. Cal. Aug. 11, 2008), *aff'd, Laster v. AT&T Mobility LLC*, 584
  F.3d 849 (9th Cir. 2009) ..............................................................................22

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003)..................................14, 15

*Lozano v. AT&T Wireless Servs., Inc.*,
  504 F.3d 718 (9th Cir. 2007).........................................................................21

*McKinniss v. Gen. Mills, Inc.*,
  No. 07-2521-GAF, 2007 U.S. Dist. LEXIS 96107
  (C.D. Cal. Sept. 18, 2007)...........................................................................9, 16

*McKinniss v. Kellogg USA*,
  No. 07-2611-ABC, 2007 U.S. Dist. LEXIS 96106
  (C.D. Cal. Sept. 19, 2007).............................................................................16

Gibson, Dunn &
Crutcher LLP

iii

*McKinniss v. Sunny Delight Beverages Co.*,
  No. 07-02034-RGK, 2007 U.S. Dist. LEXIS 96108
  (C.D. Cal. Sept. 4, 2007) ............................................................. 9

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634, 88 Cal. Rptr. 3d 859 (2009) ............................. 18

*Nat'l Council for Improved Health v. Shalala*,
  122 F.3d 878 (10th Cir. 1997) ....................................................... 7

*Outboard Marine Corp. v. Super. Ct.*,
  52 Cal. App. 3d 30, 124 Cal. Rptr. 852 (1975) ......................... 21

*People v. Casa Blanca Convalescent Homes, Inc.*,
  159 Cal. App. 3d 509, 206 Cal. Rptr. 164 (1984) ..................... 21

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241 (3d Cir. 2011) ....................................................... 15

*Peviani v. Hostess Brands, Inc.*,
  750 F. Supp. 2d 1111 (C.D. Cal. 2010) ..................................... 13

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
  642 F. Supp. 2d 1112 (C.D. Cal. 2009) ....................................... 8

*Ries v. Hornell Brewing Co.*,
  No. 10-01139, 2011 U.S. Dist. LEXIS 36845
  (N.D. Cal. Apr. 4, 2011) ............................................................. 21

*Semitekol v. Monaco Coach Corp.*,
  582 F. Supp. 2d 1009 (N.D. Ill. 2008) ....................................... 24

*Shein v. Canon U.S.A., Inc.*,
  No. 08-07323-CAS, 2009 U.S. Dist. LEXIS 131519
  (C.D. Cal. June 22, 2009) ........................................................... 22

*Skelton v. GM Corp.*,
  660 F.2d 311 (7th Cir. 1981) ..................................................... 23

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ..................................................... 6

*Sugawara v. PepsiCo*,
  No. 08-01335, 2009 U.S. Dist. LEXIS 43127,
  (E.D. Cal. May 21, 2009) ........................................................... 16

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
  922 F. Supp. 299 (C.D. Cal. 1996) ............................................. 20

*Turek v. Gen. Mills, Inc.*,
  662 F.3d 423 (7th Cir. 2011) .................................................. 7, 13

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ................................................. 6, 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

*Videtto v. Kellogg USA,*
    No. 08-01324, 2009 U.S. Dist. LEXIS 43114
    (E.D. Cal. May 20, 2009) ......................................................................... 16

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*
    529 U.S. 765, 120 S. Ct. 1858, 146 L. Ed. 836 (2000) ........................... 18

*Werbel ex rel. v. PepsiCo, Inc.,*
    No. 09-04456, 2010 U.S. Dist. LEXIS 76289
    (N.D. Cal. July 2, 2010) ........................................................................... 16

*Williams v. Gerber,*
    523 F.3d 934 (9th Cir. 2008) ................................................................... 17

*Wyeth v. Levine,*
    555 U.S. 555, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009) ........................... 8

*Yumul v. Smart Balance, Inc.,*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ................................................... 19

**Statutes**

15 U.S.C. § 2301(6) .......................................................................... 23, 24

15 U.S.C. § 2310(e) ................................................................................ 24

15 U.S.C. § 2311(d) ................................................................................ 24

21 U.S.C. § 331(b) .................................................................................... 7

21 U.S.C. § 337(a) .................................................................................. 20

21 U.S.C. § 343(i), (k) ............................................................................ 10

21 U.S.C. § 343(q) .................................................................................. 11

21 U.S.C. § 343-1(a)(1)-(3) ...................................................................... 7

21 U.S.C. § 343-1(a)(2)-(4) ................................................................. 2, 10

21 U.S.C. § 343-1(a)(4) ................................................................. 7, 11, 13

21 U.S.C. § 393(b)(2)(A) .......................................................................... 7

Cal. Bus. & Prof. Code §§ 17204, 17535 ............................................... 18

Cal. Civ. Code § 1780(a) ........................................................................ 18

Cal. Civ. Code § 1782 ............................................................................. 21

Cal. Health & Saf. Code § 110100 .......................................................... 20

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 6

Gibson, Dunn &
Crutcher LLP

v

1

Fed. R. Civ. P. 9(b) ................................................................................6

2

**Regulations**

3

7 C.F.R. § 205.605 ...............................................................................17

4

16 C.F.R. § 700.3 .................................................................................23

5

21 C.F.R. § 100.1(c)(4) ..........................................................................8

6

21 C.F.R. § 101.9 ..............................................................................7, 12

7

21 C.F.R. § 101.9(c)(8)(iv) ...................................................................12

8

21 C.F.R. § 101.9(c)(8)(v) ....................................................................11

9

21 C.F.R. § 101.9(k)(4)......................................................................1, 12

10

21 C.F.R. § 101.22(i) ..............................................................................9

11

21 C.F.R. § 101.30(a), (c)-(d) ..............................................................10

12

21 C.F.R. § 101.36(e)(11)(i) .............................................................11, 12

13

21 C.F.R. § 182.3013 ............................................................................12

14

21 C.F.R. § 184.1212 ............................................................................12

15

21 C.F.R. § 184.1212(a) .......................................................................12

16

21 C.F.R. § 184.1535 ............................................................................12

17

21 C.F.R. § 184.1676 ............................................................................12

18

21 C.F.R. § 184.1945 ............................................................................12

19

21 C.F.R. § 184.1945(a) .......................................................................11

20

58 Fed. Reg. 2079, 2167 .......................................................................12

21

58 Fed. Reg. 2302, 2407 .......................................................................17

22

62 Fed. Reg. 49826, 49841 ...................................................................12

23

**Other Authorities**

24

H.R. Rep. No. 101-538 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336,
   3337 ...................................................................................................7

25

119 Cong. Rec. 967 (Jan. 12, 1973) .....................................................23

26

27

28

Gibson, Dunn &
Crutcher LLP

# I.  <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

This is one of many recent "all natural" food and beverage labeling class actions that are crowding state and federal court dockets.  Plaintiff's counsel in these cases follow a predictable path—they identify one aspect of the product label, read it in isolation and ignore the other aspects of the label (including the federally-mandated ingredient disclosures), and bring a putative class action lawsuit for damages and to compel the defendant to modify its labeling.

In this case, Plaintiff Charles Hairston claims that he was "deceived" by the "All Natural" labeling of four of Defendants' "SoBe 0 Calorie Lifewater" beverages due to the use of fruit names (e.g., MACINTOSH APPLE CHERRY") to describe the beverages' flavors and due to the addition of vitamins to the products.  All of Plaintiff's claims fail for several reasons:

*First*, the challenges to the use of fruit names on the products and the labeling of vitamins are foreclosed by the express preemption provisions in the Federal Food, Drug, and Cosmetic Act ("FDCA") and by specific labeling regulations promulgated by the Food and Drug Administration ("FDA").  It is well-established in FDCA preemption cases that private plaintiffs cannot impose state law liability on beverage companies for labeling that complies with the FDA's detailed labeling regime.  Here, federal law expressly preempts Plaintiff's attempt to claim that use of a fruit name was deceptive, because FDA regulations specifically permit the use of fruit names to describe the characterizing flavor of the products.  Several courts in this District have rejected similar attempts to base false advertising claims on such a theory.

Plaintiff's challenge to the use of common names to describe added vitamins is also preempted.  Federal regulations specifically permit Defendants' labeling of the vitamins (e.g., "CYANOCOBALAMIN (VITAMIN $B_{12}$)").  In fact, the FDA considers food and beverages to be misbranded if they suggest that "a natural vitamin in a food is superior to an added or synthetic vitamin."  21 C.F.R. § 101.9(k)(4) (Jan. 6, 1993).  Accordingly, federal law expressly preempts Plaintiff's claim that Defendants'

labeling of added vitamins is misleading, as Plaintiff's claim is simply an impermissible attempt to use state law to impose a new beverage labeling requirement that is "not identical to" federal labeling requirements.  21 U.S.C. § 343-1(a)(2)-(4) (Regulatory Appendix, Tab 1).

Because all of Plaintiff's claims rest on his allegations regarding the use of fruit names on product labels and the labeling of added vitamins, his entire complaint should be dismissed.

*Second*, Plaintiff's state law consumer protection and false advertising claims based on the "all natural" label fail because Plaintiff cannot show any actual or likely deception, particularly after stripping away the impermissible fruit name and vitamin allegations.  He ignores that immediately beneath the "ALL NATURAL" statement, each of the products disclosed "WITH VITAMINS" or "WITH B VITAMINS," and the side panel truthfully identified all of the products' ingredients.  Further, Plaintiff does not even allege that he purchased one of the four products at issue (B-ENERGY STRAWBERRY APRICOT), so he cannot base any claims on that beverage, and his conclusory allegations also fail to describe when, where, or how frequently he purchased the products, or provide other detailed allegations mandated by Rule 9(b) of the Federal Rules of Civil Procedure.

*Third*, Plaintiff's warranty claim fails for the fundamental reason that the labels on the SoBe products do not constitute written warranties as defined by federal law.

In sum, Plaintiff cannot base this putative class action on his failure to review the entire product label, especially where the labels fully comply with federal law and regulations.  Plaintiff does not state facts to support any actionable claim, and the Court should dismiss this action.

## II.  <u>SUMMARY OF ALLEGED FACTS</u>

Defendant South Beach Beverage Company, Inc. ("SoBe") is a subsidiary of Defendant PepsiCo, Inc.  SoBe manufactures a diverse range of beverages, including teas and enhanced waters, that are characterized by exotic flavor combinations and

added vitamins.  This lawsuit involves SoBe's 0 Calorie Lifewater beverages, which are no-calorie, vitamin-enhanced, flavored water drinks.  The 0 Calorie Lifewater beverages at issue in this case are MACINTOSH APPLE CHERRY, STRAWBERRY KIWI LEMONADE, B-ENERGY STRAWBERRY APRICOT, and BLACK CHERRY DRAGONFRUIT. (First Am. Compl. ("FAC") ¶¶ 2-3; Exs. A-D.)

Plaintiff is a citizen of California who alleges that he "regularly purchased SoBe products over the last 3-4 years," including MACINTOSH APPLE CHERRY, STRAWBERRY KIWI LEMONADE, and BLACK CHERRY DRAGONFRUIT flavors—but not B-ENERGY STRAWBERRY APRICOT.  (*Id.* ¶ 12.)  He also alleges that he "has frequently purchased SoBe Beverages in the county of Riverside, as well as other locations in California, most recently in or about December 2011 at a Vons supermarket in Corona, California."  (*Id.*)  The FAC contains no other facts regarding Plaintiff's alleged purchases of SoBe products.

The FAC advances three related challenges to the product labeling.  First, Plaintiff alleges that the "ALL NATURAL" labeling is potentially deceptive because the products contain "Deceptively Labeled Ingredients" that are "synthetic or created via chemical processing."  (*Id.* ¶ 21.)  Specifically, the FAC challenges the use of the following six ingredients:  ascorbic acid, cyanocobalamin, calcium pantothenate, niacinamide, pyridoxine hydrochloride, and xanthan gum.  (*Id.* ¶¶ 22-35.)  The first five ingredients are accepted added forms of Vitamins C, $B_{12}$, $B_5$, $B_3$, and $B_6$, respectively.  (*Infra* pp. 10-12 & n.4.)  Plaintiff concedes that the sixth ingredient (xanthan gum) is "derived from a natural bacterium" and is "used in food products such as beverages as a thickening or stabilizing agent, and as an emulsifier in salad dressings."  (FAC ¶ 35.)[1]

_____

[1] Plaintiff does not challenge all of the product ingredients, nor can he.  For example, erythritol, an ingredient used to flavor 0 Calorie Lifewaters, is a natural sweetener found in certain fruits and berries, and is the second listed ingredient on all of the beverages after "water."  (FAC, Exs. A-D.)

Second, Plaintiff contends that the labels are potentially misleading because using the names of fruits in the product names (e.g., "MACINTOSH APPLE CHERRY") is misleading, presumably because the products do not contain actual fruit (*id.* ¶¶ 12, 36) and because the fruit names "are likely" to deceive consumers into "believing that Defendants' SoBe Beverages are, indeed, 'All Natural.'"  (*Id.* ¶ 4.)

Third, Plaintiff claims that the use of the common vitamin name (e.g., $B_{12}$) on the product labels is misleading.  (*See id.* ¶ 22 (ascorbic acid labeled as VITAMIN C); *id.* ¶ 26 (cyanocobalamin labeled as VITAMIN $B_{12}$); *id.* ¶ 29 (calcium pantothenate labeled as VITAMIN $B_5$); *id.* ¶ 32 (niacinamide labeled as VITAMIN $B_3$); *id.* ¶ 33 (pyridoxine hydrochloride labeled as VITAMIN $B_6$).)

Despite claiming that he was misled, Plaintiff admits that he "read and relied on" the product labeling.  (*Id.* ¶ 7; *see also id.*, Exs. A-D.)  This review would reveal that each of SoBe's 0 Calorie Lifewaters at issue here is labeled as a "NUTRIENT ENHANCED HYDRATION BEVERAGE" that is "0 CALORIES [¶] ALL NATURAL [¶] WITH VITAMINS" or "0 CALORIES [¶] ALL NATURAL [¶] WITH B VITAMINS."  (*Id.*, Exs. A-D.)  The following is an example of the front of the MACINTOSH APPLE CHERRY label attached to the FAC as Exhibit A:



The side panel of each product also discloses the ingredients, including water and the vitamins at issue in this case:



(*Id.*, Exs. A-D.)  Above the ingredient disclosure is the "Nutrition Facts" panel with the recommended "Daily Value" of each vitamin.  (*Id*., Exs. A-D.)

The FAC asserts claims for alleged violations of the Consumers Legal Remedies Act (the "CLRA"; Cal. Civ. Code § 1750), the False Advertising Law (the "FAL"; Cal. Bus & Prof. Code § 17500), the Unfair Competition Law (the "UCL"; Cal. Bus & Prof. Code § 17200), and the federal Magnuson-Moss Warranty Act ("MMWA"; 15 U.S.C. § 2301).  (FAC ¶¶ 48-80.)  Plaintiff seeks to represent a putative class of "[a]ll persons in California who, within the last four-years . . . bought" the Lifewaters identified in the complaint (*id.* ¶ 40), and he requests damages, restitution, injunctive and declaratory relief, attorneys' fees and costs, and pre-judgment interest.  (*Id.* at p. 16, ¶¶ 54, 62, 69, 80.)[2]

---

[2]  While Plaintiff also alleges that the products should have been "free of . . . non-juice ingredients" (FAC ¶ 39), this allegation is not connected to any other allegation in the complaint.  Nor would such a challenge make sense here, as the products at issue are vitamin-enhanced flavored water beverages, not juices.  This allegation appears to be an unintentional remnant of a pleading used in another lawsuit.  In the last few months, Plaintiff's counsel filed at least four other putative class actions across the state that challenge "all natural" labeling on other food and beverage products.  (*See, e.g., Marchewka v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-1701-JAK (C.D. Cal.) (filed Nov. 7, 2011); *Babic v. Bear Naked*

[Footnote continued on next page]

## III.  THE LEGAL STANDARDS GOVERNING THIS MOTION

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Although the Court must accept factual allegations as true for purposes of a motion to dismiss, this tenet is "inapplicable to legal conclusions." *Id.*  After stripping away the "conclusory statements" in the complaint, the remaining factual allegations must do more than "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotations omitted).  In making this "context-specific" determination, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  This analysis provides a critical gatekeeping function, because claims must be sufficiently plausible "such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Rule 9(b) of the Federal Rules of Civil Procedure requires that the plaintiff "state with particularity the circumstances constituting fraud," and this standard specifically "appl[ies] to claims for violations of the CLRA and UCL," as well as the FAL, where—as here—these claims are based on a fraud theory.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Accordingly, a plaintiff's allegations must be "specific enough to give defendants notice of the particular misconduct," including "the 'who, what, when, where, and how' of the misconduct charged," *Kearns*, 567 F.3d at 1124 (citations omitted), and "the time, place, and specific content of the false

---

[Footnote continued from previous page]
*Inc.*, No. 11-02985 (S.D. Cal.) (filed Dec. 21, 2011); *Brandon v. The FRS Co.*, No. 11-06639 (N.D. Cal.) (filed Dec. 23, 2011); *Anderson v. Jamba Juice Co.*, No. 12-01213 (N.D. Cal.) (filed Mar. 12, 2012).)

1   representations," *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)

2   (citations omitted).

## IV.   FEDERAL LAW EXPRESSLY PREEMPTS PLAINTIFF'S CHALLENGES TO THE SOBE BEVERAGE LABELS

5   Under the Supremacy Clause, federal law is the "supreme law of the land." U.S.

6   Const., art. VI, cl. 2. With respect to food and beverage labeling, Congress (through

7   the FDCA) and the FDA (through its related regulations) have established a

8   comprehensive regulatory regime, encompassing some 4,000 pages and 1,300 separate

9   parts of the Code of Federal Regulations (filling nine full volumes). Among other

10  topics, these detailed provisions prohibit "misbranding" of food (21 U.S.C. § 331(b))

11  and grant the FDA *exclusive* authority to ensure that "foods are . . . properly labeled"

12  on behalf of all consumers (*id.* § 393(b)(2)(A)). So all-encompassing is this federal

13  regulatory regime that private litigants are prohibited from suing to enforce compliance

14  with it. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4, 121 S. Ct.

15  1012, 148 L. Ed. 2d 854 (2001). The uniform federal food and beverage labeling

16  system is important because it avoids a patchwork of state regulations that would force

17  manufacturers to "print 50 different labels . . . ." *Turek v. Gen. Mills, Inc.*, 662 F.3d

18  423, 426 (7th Cir. 2011).

19  In 1990, Congress amended the FDCA by enacting the National Labeling and

20  Education Act ("NLEA"), specifically to "'clarify and to strengthen [the FDA's]

21  authority to require nutrition labeling on foods . . . .'" *Nat'l Council for Improved*

22  *Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101-538,

23  at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337). Among other things, the

24  NLEA imposed uniform nutrition and ingredient labeling in the now ubiquitous

25  "Nutrition Facts" box. 21 C.F.R. § 101.9 (Jan. 6, 1993).

26  Most pertinent here, the NLEA includes express preemption provisions that

27  prohibit "any requirement for the labeling of food . . . that is not identical to" federal

28  regulations, 21 U.S.C. § 343-1(a)(1)-(3); *see also id.* § 343-1(a)(4) (addressing

nutrition labeling of food), with "*not identical to*" defined broadly to mean any "State requirement directly or indirectly impos[ing] obligations" that are "not imposed by" federal law or that "[d]iffer from those specifically imposed by" federal law, 21 C.F.R. § 100.1(c)(4) (Jan. 6, 1993) (Regulatory Appendix, Tab 2).  As a result, "[c]onsumer protection laws (such as the UCL) are preempted if they seek to impose requirements" that vary from those mandated by federal law, or if that would be the practical effect of their enforcement.  *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-4387, 2011 U.S. Dist. LEXIS 57348 , at *21 (N.D. Cal. May 26, 2011) (citing *Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187, 1200, 173 L. Ed. 2d 51 (2009)); *see also Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1121-22 (C.D. Cal. 2009) (plaintiff cannot "extend[] its claims in a manner that would impose requirements that are different from federal standards under the [FDCA] and FDA").

## A.    Plaintiff's Challenges To The Use Of Fruit Names To Describe Flavors Are Preempted And Must Be Dismissed

Plaintiff bases his challenge to SoBe's product labeling on his allegations that the use of fruit names on the labels is improper and misleading.  In particular, he claims that "[s]ince Defendants' SoBe Beverages are named after fruit[,] [Plaintiff is] likely to be deceived into believing that Defendants' SoBe Beverages are, indeed, 'All Natural,'" and that the beverages are "inconsistent with the 'All Natural' claims, *especially in light of the fruit names on the SoBe Beverages*."  (FAC ¶¶ 4, 5 (emphasis added); *see also id.* ¶ 36 ("By labeling SoBe Products as 'All Natural' and using the name of fruits on the front of the labels, Defendants create a reasonable consumer expectation that the products are manufactured with 'all natural' ingredients.").)  Plaintiff's challenge to SoBe's use of fruit names is an impermissible attempt to impose labeling requirements different from those mandated by the FDA; thus, Plaintiff's claims based on this challenge are preempted.[3]

---

[3]  Plaintiff's original complaint alleged that the use of fruit names would lead

[Footnote continued on next page]

Federal law expressly preempts Plaintiff's claims related to the use of fruit names on product labels. FDA regulations *explicitly* permit manufacturers "to use the name and image of a fruit on a product's packaging to describe the characterizing flavor of the product even where the product does not contain any of that fruit, *or contains no fruit at all*." *Dvora v. Gen. Mills, Inc.*, No. 11-1074-GHW, 2011 U.S. Dist. LEXIS 55513, at *10 (C.D. Cal. May 16, 2011) (emphasis added) (discussing 21 C.F.R. § 101.22(i) (Aug. 2, 1973) (Regulatory Appendix, Tab 4)). Any contrary rule would prohibit food and beverage manufacturers from explaining to consumers what their fruit-flavored products tasted like. For example, popsicles that did not contain actual cherry bits would have to be labeled as simply "red." Several recent cases have rejected similar attempts to base claims on the use of fruits to describe the product's characterizing flavor. *See, e.g., McKinniss v. Gen. Mills, Inc.*, No. 07-2521-GAF, 2007 U.S. Dist. LEXIS 96107, at *16 (C.D. Cal. Sept. 18, 2007) (use of "Strawberry Kiwi" to designate flavor of yogurt containing no fruit ingredients was "permissible to demonstrate the 'characterizing flavor' of the product"); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034-RGK, 2007 U.S. Dist. LEXIS 96108, at *11 (C.D. Cal. Sept. 4, 2007) ("FDA regulations permit illustrations of fruit on product labels to indicate the product's 'characterizing flavor,' even where the product contains no ingredients derived from the depicted fruit.").

Similarly, a beverage need only declare that it lacks juice of the fruit identified in the product's name if it "*purport[s]* to be a beverage that contains any fruit or

[Footnote continued from previous page]
consumers to believe the 0-calorie waters actually contain the fruit identified in the product's name. (*See* Compl. [ECF No. 1] ¶¶ 15-16.) For example, Plaintiff alleged that the use of the name "B-ENERGY STRAWBERRY APRICOT" was misleading because the ingredient disclosures on the bottle reveal that the product contains no strawberries or apricots. (*Id.* ¶ 16.) Plaintiff appears to have altered his theory in the FAC, which repackages the allegations about the use of fruit names to support his challenge to the "All Natural" aspect of the label. Plaintiff's challenge to the use of fruit names remains an impermissible attempt to impose a labeling requirement different than federal law.

Gibson, Dunn & Crutcher LLP

1   vegetable juice" by, for example, using a fruit picture on the label or expressly

2   claiming to contain a certain fruit juice.  21 C.F.R. § 101.30(a), (c)-(d) (Jan. 6, 1993)

3   (emphasis added).  But SoBe's Lifewater beverages do not include either images or

4   express representations that the products contain specific fruit juices.  *See*, *e.g.*, *id.*

5   § 101.30(a) (fruit-flavored sodas need not contain percent juice disclosures where they

6   do not purport to contain fruit juice); FAC, Exs. A-D.

7            Thus, because the FDCA's "comprehensive scheme governing the labeling of

8   flavors and flavorings in food products" expressly allows Defendants to use fruit

9   names to describe Lifewaters' flavor profiles regardless of actual fruit content, and

10   because the FAC attempts to impose labeling requirements *different* than federal law,

11   Plaintiff's claims related to the use of fruit names on product labels are preempted.

12   *See*, *e.g.*, *Dvora*, 2011 U.S. Dist. LEXIS 55513, at *9, 11-14 (finding preemption

13   where CLRA and UCL claims challenged use of the words "Blueberry Pomegranate"

14   in labeling a cereal not containing any blueberries or pomegranates); 21 U.S.C. § 343-

15   1(a)(2), (3) (Regulatory Appendix, Tab 1) (expressly preempting any state law claims

16   that are not identical to the requirements set forth under 21 U.S.C. § 343(i), (k), and

17   accompanying regulations).  Moreover, because Plaintiff's claim that the "All Natural"

18   label is deceptive rests on the preempted allegations about fruit names (*see* FAC ¶¶ 4,

19   5, 18, 36), his "All Natural" claims should also be dismissed.

## B.     Plaintiff's Attempt To Require Defendants To Label Added Vitamins Differently Conflicts With Federal Law And Is Preempted

22            Plaintiff also impermissibly bases his complaint on the claim that SoBe

23   "deceptively labeled" five vitamins added to its products and misled consumers by

24   using the common names of vitamins on the products' ingredient statements.  (*See*

25   FAC ¶¶ 21-34.)  For example, he alleges that "labeling cyanocobalamin as Vitamin

26   B12 is misleading" (*id.* ¶ 26), and that "labeling niacinamide as Vitamin B3 is

27   misleading" (*id.* ¶ 32).  In essence, it appears that Plaintiff seeks to use this lawsuit

28   impermissibly to require Defendants to label the added vitamins without reference to

1   the common name (e.g., "CYANOCOBALAMIN" instead of "CYANOCOBALAMIN

2   (VITAMIN B$_{12}$)") and to distinguish between synthetic and natural forms of vitamins.

3        Plaintiff's allegations concerning vitamin labeling are expressly preempted.

4   Pursuant to Section 343-1(a)(4), the FDCA expressly preempts "any requirement for

5   nutrition labeling of food that is not identical to the requirement" in 21 U.S.C.

6   § 343(q), which includes the labeling of vitamins (*id*. § 343(q)(1)(E)).  Among other

7   requirements, FDA regulations carefully circumscribe how manufacturers must label

8   vitamins added to beverages by:  (1) expressly allowing manufacturers to identify

9   equivalent nutrients using the synthetic and common names in the parenthetical

10  alternative form used by SoBe and familiar to consumers (e.g., "CYANOCOBALAMIN

11  (VITAMIN B$_{12}$)"); (2) specifically acknowledging the synonymous nature of a "natural"

12  vitamin and its synthetic form; and (3) otherwise treating the synthetic and natural

13  forms of vitamins as equivalent.

14       For example, the FDA has explained that "Vitamin B$_{12}$" is "also known as

15  cyanocobalamin."  21 C.F.R. § 184.1945(a) (Feb. 15, 1985) (Regulatory Appendix,

16  Tab 7).  FDA-approved examples of compliant nutrition labels expressly permit the

17  label "Vitamin B$_{12}$ (as cyanocobalamin)," *id*. § 101.36(e)(11)(i) (Sept. 23, 1997)

18  (Regulatory Appendix, Tab 5), and this example is substantively identical to the SoBe

19  labels at issue here—"CYANOCOBALAMIN (VITAMIN B$_{12}$)" (*see* FAC, Exs. A-D).

20  Likewise, the FDA explicitly permits ascorbic acid, a "synonym" for Vitamin C, to be

21  labeled in parenthetical alternative form.  21 C.F.R. § 101.9(c)(8)(v) (Sept. 23, 1997)

22  (Regulatory Appendix, Tab 3); *id*. § 101.36(e)(11)(i) (Sept. 23, 1997) (Regulatory

23  Appendix, Tab 5).  Other FDA regulations contain similar labeling requirements for

24  the remaining vitamins that Plaintiff challenges, and thus claims as to the labeling of

25  these vitamins are also preempted.[4]  There is good reason to provide the common name

26

27  [4]  *See* 21 C.F.R. § 101.9(c)(8)(v) (Sept. 23, 1997) (Regulatory Appendix, Tab 3)
    (recognizing that "Vitamin C [and] Ascorbic acid" are "synonym[s]" that may be

28  used in the alternative in a product's nutritional information labeling); *id*.

                                        [Footnote continued on next page]

synonym in parentheses, because FDA regulations *require* manufacturers to use common vitamin names (e.g., "Vitamin C") in the Nutrition Facts box.  *See* 21 C.F.R. § 101.9(c)(8)(iv) (Sept. 23, 1997) (Regulatory Appendix, Tab 3).  Deleting the parenthetical references in the ingredients disclosures would leave consumers without any way to determine the source of the added vitamins, and thus it would create, rather than eliminate, potential confusion about the beverages' ingredients.

Moreover, the FDA has considered—and *rejected*—a proposed regulation that would require manufacturers to distinguish between natural and synthetic vitamins. *See* 21 C.F.R. § 101.9 (Jan. 6, 1993) (Regulatory Appendix, Tab 3); 62 Fed. Reg. 49826, 49841 (Sept. 23, 1997) (considering natural and synthetic versions of a vitamin to be the same in terms of their health properties).  Indeed, the agency considers a product to be "*misbranded*" if it contends otherwise; that is, manufacturers *cannot* claim that "a natural vitamin in a food is superior to an added or synthetic vitamin." 21 C.F.R. § 101.9(k)(4) (Jan. 6, 1993) (Regulatory Appendix, Tab 3) (emphasis added); *see also* 62 Fed. Reg. at 49841 (suggesting that a claim of difference between the natural and synthetic version of the same form of a nutrient would *itself* be misleading); 58 Fed. Reg. 2079, 2167 ("The agency finds no basis for" and "'forbids'" such an assertion of superiority).  Plaintiff predicates his claim on a theory that there is a difference in labeling natural and synthetic vitamins, but FDA regulations

_____

[Footnote continued from previous page]
§ 101.36(e)(11)(i) (Sept. 23, 1997) (Regulatory Appendix, Tab 5) (showing a sample nutrition label identifying "Vitamin B$_6$ (as pyridoxine hydrochloride)"); *id.* § 184.1212(a) (Regulatory Appendix, Tab 6) (describing "[c]alcium pantothenate" as a "salt" of "one of the vitamins of the B complex" and as having "vitamin activity" itself); *cf.* Nat'l Institutes of Health (NIH), Niacin & Niacinamide (Vitamin B$_3$):  MedlinePlus Supplements, http://www.nlm.nih.gov/medlineplus/druginfo/natural/924.html (Regulatory Appendix, Tab 8) (stating that "[n]iacin and niacinamide are forms of Vitamin B$_3$"). The FDA also specifically recognizes that all of the vitamin additives here are "Generally Recognized as Safe."  *See* 21 C.F.R. § 182.3013 (Mar. 15, 1977) (ascorbic acid); *id.* § 184.1945 (Feb. 15, 1985) (Regulatory Appendix, Tab 7) (cyanocobalamin); *id.* § 184.1212 (Nov. 15, 1983) (Regulatory Appendix, Tab 6) (calcium pantothenate); *id.* § 184.1535 (Nov. 16, 1983) (niacinamide); *id.* § 184.1676 (Nov. 10, 1983) (pyridoxine hydrochloride).

1    contradict—and therefore preempt—this theory.

2        The bottom line is that "[e]ven if [any] disclaimers that the plaintiff wants added

3    would be consistent with [the FDCA] . . . consistency is not the test; identity is."

4    *Turek*, 662 F.3d at 427; *see also Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111,

5    1119 (C.D. Cal. 2010) (claims fail where they "necessarily impose a state-law

6    obligation . . . not required by federal law").  FDA regulations permit the use of

7    common names and do not require labels to distinguish between synthetic and natural

8    vitamins, so Plaintiff may not use his state law claims to impose new requirements that

9    are "not identical to" the FDA's regulations.  21 U.S.C. § 343-1(a)(4).

10   ## V.   PLAINTIFF'S CONSUMER PROTECTION AND FALSE ADVERTISING
11   ## CLAIMS FAIL AS A MATTER OF LAW

12   ### A.   Defendants' Entire Label—And Not Just The Selective Excerpts Upon
13   ### Which Plaintiff Relies—Is Not Deceptive

14       Even if the Court concludes that federal law preempts only Plaintiff's claims

15   regarding fruit names and vitamin labeling, and not the broader "all natural" challenge

16   based in significant part on those claims, the FAC should be dismissed.  Plaintiff's "all

17   natural" theory fails because after removing the preempted statements, all that remains

18   is a selective excerpt of one component of the SoBe label that cannot be read out of

19   context.

20       Plaintiff alleges dozens of times in more than twenty separate paragraphs that

21   the beverages are labeled simply as "All Natural."  (*See, e.g.*, FAC ¶¶ 3, 4, 5, 7, 12, 16,

22   18, 21, 23, 25, 28, 31, 34, 36, 37, 43(a), 51, 58, 63, 76, 77.)  But the SoBe labels do not

23   say only "ALL NATURAL" without elaboration.  Instead, as the following excerpts

24   attached to the FAC illustrate, the "ALL NATURAL" statement was immediately

25   followed by the additional statement "WITH VITAMINS" or "WITH B VITAMINS":

26

27

28

Gibson, Dunn &
Crutcher LLP

13

  

(FAC, Exs. A-D.)

Thus, contrary to Plaintiff's allegations, the products do not use "ALL NATURAL" in a vacuum, nor do they purport to identify the vitamins as "natural." Indeed, as discussed above, distinguishing between natural and synthetic vitamins is inconsistent with the FDA's regulatory guidance. (*See supra* p. 12.) It is not plausible under *Iqbal* and *Twombly* that a reasonable consumer would read "ALL NATURAL" as modifying "WITH VITAMINS" and meaning that added vitamins are "all natural vitamins." Otherwise, "Vanilla Ice Cream with Fudge" would mean Vanilla Ice Cream and Vanilla Fudge. *See Carrea v. Dreyer's Grand Ice Cream*, No. 11-15263, 2012 U.S. App. LEXIS 6851, at *3-4 (9th Cir. Apr. 5, 2012) (rejecting implausible attempt to pluck words on a product label out of context). This conclusion is even more apparent here, given that the products are—and are labeled as being—0-calorie, "nutrient enhanced," and flavored water beverages. (FAC, Exs. A-D.)

Pursuant to the UCL, FAL, and CLRA, an advertisement is not deceptive "merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507, 129 Cal. Rptr. 2d 486 (2003) (citation and internal quotation marks omitted). As the Ninth Circuit has explained, the "'reasonable consumer'" is "'a person of ordinary

intelligence,'" not an "'unwary consumer,'" and "unless particularly gullible consumers are targeted"—which Plaintiff does not (and cannot) allege here—a defendant "'may expect [consumers] to behave reasonably as well.'" *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (citations omitted). The Court of Appeal in *Lavie* used the following example to illustrate this point:

> Perhaps a few misguided souls believe, for example, that all "Danish pastry" is made in Denmark. Is it, therefore, an actionable deception to advertise "Danish pastry" when it is made in this country? Of course not. A representation does not become "false and deceptive" merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed.

105 Cal. App. 4th at 507 (citation and internal quotation marks omitted).

Plaintiff cannot base his claims on a selective reading of labels that ignores the *immediately following* qualifying language. Consumers have a responsibility to look at the packaging *as a whole*. In *Freeman v. Time*, for example, the plaintiff received a "Million Dollar Dream Sweepstakes" mailer stating he had "won" over $1 million. 68 F.3d at 287. But the mailer contained qualifying language and conditions on the "prize," so when plaintiff claimed he was nonetheless entitled to $1 million, the Ninth Circuit affirmed dismissal of his UCL and CLRA claims because it was "not persuasive" that "reasonable" consumers would read only selected portions of challenged advertising and ignore relevant qualifications. *Id.* at 289-90. *See also Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 251 (3d Cir. 2011) (prohibiting plaintiffs in false advertising cases from reading the challenged statements "in isolation").

Courts in this Circuit frequently dismiss food and beverage labeling cases on the pleadings where plaintiffs attempt to read a portion of the packaging out of context and without considering other language (including the ingredient disclosures):

- In *McKinniss v. Gen. Mills, Inc.*, 2007 U.S. Dist. LEXIS 96107, the district court dismissed the plaintiffs' UCL, FAL, and CLRA claims alleging that labels on

certain cereal and yogurt products were misleading with respect to fruit content despite the products' compliance with applicable FDA regulations.  *Id*. at *10-17.  The court held that "any reasonable consumer would be put on notice of the product's [actual] contents simply by doing sufficient reading of the ingredient list," and this list "would insure that the consumer was not deceived."  *Id.* at *16.

- In *Werbel ex rel. v. PepsiCo, Inc.*, No. 09-04456, 2010 U.S. Dist. LEXIS 76289 (N.D. Cal. July 2, 2010), the district court held that it is "[n]onsense" to think that "Cap'n Crunch Berries" cereal "derives nutrition from actual fruit by virtue of the reference to 'Berries.'"  *Id.* at *9.  *See also Sugawara v. PepsiCo*, No. 08-01335, 2009 U.S. Dist. LEXIS 43127, at *14 (E.D. Cal. May 21, 2009) (allowing plaintiff to ignore the ingredient disclosures on "Cap'n Crunch Berries" cereal "would require this Court to ignore all concepts of personal responsibility and common sense").

- In *McKinniss v. Kellogg USA*, No. 07-2611-ABC, 2007 U.S. Dist. LEXIS 96106 (C.D. Cal. Sept. 19, 2007), the district court rejected the plaintiff's argument that the defendant's use of "Froot Loops" in the cereal name suggested that the product contained real fruit, because "the product's name is spelled F-R-O-O-T," "[t]he cereal pieces are brightly colored rings, which in no way resemble any currently known fruit," and the ingredient disclosures revealed that the product did not contain actual fruit.  *Id.* at *11-12.  *See also Videtto v. Kellogg USA*, No. 08-01324, 2009 U.S. Dist. LEXIS 43114, at *12 (E.D. Cal. May 20, 2009) (dismissing UCL claim predicated on alleged deception that "Froot Loops" cereal contains real fruit, and denying leave to amend because "[t]he survival of the instant claim would require this Court to ignore all concepts of personal responsibility and common sense").

- In *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 128 Cal. Rptr. 3d 109 (2011), the California Court of Appeal noted that while "'labels matter,'" *id.* at 1306 (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 328, 120 Cal. Rptr. 3d 741 (2011)), "no *reasonable consumer* would be misled to think that the green drop on Fiji water['s label] represents . . . that Fiji water is environmentally superior to that of the

1    competition." *Id.* at 1307.[5]

2         Likewise, here the SoBe labels disclosed all of the product ingredients,

3    including the added vitamins.  In his original complaint, Plaintiff freely conceded that

4    he was able to "discover" the alleged deception and learn what the products did and

5    did not contain by inspecting the ingredient disclosures:  "Upon scrutiny of the

6    ingredients listed on the back of the bottle . . . under the Nutrition Facts Box, it is *clear*

7    that the SoBe Beverages do not contain juices of any of the fruits listed on the front of

8    the labels."  (*See* Compl. [ECF No. 1] ¶ 16 (emphasis added).)  But because Plaintiff

9    cannot rely on a selectively incomplete reading of the SoBe labels and unmoor the

10   "ALL NATURAL" statement from its surrounding context, his claims must fail.

11        In addition to the vitamins, Plaintiff challenges one other ingredient (xanthan

12   gum) as not "natural" that appears in only one product (BLACK CHERRY DRAGONFRUIT)

13   that he purchased.  (FAC ¶ 35; *see also id.*, Exs. A-D.)  Although Plaintiff alleges that

14   xanthan gum "is considered to be synthetic by federal regulation" (*id.* ¶ 35), the

15   regulation that he cites—7 C.F.R. § 205.605 (Dec. 21, 2000)—actually specifies that

16   the ingredient is "organic," and he concedes that xanthan gum is "derived from a

17   ***natural*** bacterium."  (FAC ¶ 35 (emphasis added).)  Plaintiff also acknowledges that

18   "[x]anthan gum is used in food products and beverages as a thickening or stabilizing

19   agent" (*id.*), so by his own admission, he cannot argue that this ingredient falls outside

20   of the FDA's definition of "natural" upon which he relies—i.e., something that

21   "'would not normally be expected'" in the beverage.  (FAC ¶ 20; *see also* Ex. E; 58

22   Fed. Reg. 2302, 2407 (Jan. 6, 1993) (maintaining agency policy to consider "natural"

23   to mean that "nothing artificial or synthetic . . . has been included in, or has been added

---

[5]  The foregoing cases both predate and postdate *Williams v. Gerber*, 523 F.3d 934
(9th Cir. 2008), which held that the depiction of fruit images on the front of
defendant's "Fruit Juice Snacks" was deceptive because the product did not contain
*any* juice from the pictured fruits. *Id.* at 939.  By contrast, the "ALL NATURAL [¶]
WITH VITAMINS" statement on the front of the SoBe beverages at issue here is
entirely consistent with the ingredient disclosures on the side labels, and therefore
could not deceive a *reasonable* consumer.

1 to, a food that would not normally be expected to be in the food").)

2 **B.    Plaintiff Cannot Bring Claims Regarding A Product He Never Purchased**

3 Article III requires plaintiffs to establish an "actual" and "concrete" injury in

4 fact that is particularized to them. *Vt. Agency of Nat. Res. v. United States ex rel.*

5 *Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 146 L. Ed. 836 (2000); *see also Birdsong*

6 *v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (no Article III standing where

7 plaintiffs failed to allege injury that was "concrete and particularized *as to*

8 *themselves*").  Similarly, the UCL, FAL, and CLRA also require a showing of injury

9 and causation, *see* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a),

10 and private plaintiffs must have entered into a transaction with the defendant in order

11 to have standing to pursue these claims.  *See, e.g.*, *Kwikset*, 51 Cal. 4th at 317

12 ("[T]hose who have not engaged in any business-dealings with" defendants lack

13 standing for UCL/FAL claims); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641,

14 88 Cal. Rptr. 3d 859 (2009) (same for CLRA claims).

15 Although Plaintiff purports to assert claims based on B-ENERGY STRAWBERRY

16 APRICOT (FAC ¶¶ 3, 40), he does not identify this product among the SoBe beverages

17 that he purchased (*id.* ¶ 12).  Without an alleged purchase, Plaintiff may not pursue any

18 claims based on this product.  *See, e.g.*, *Carrea v. Dreyer's Grand Ice Cream*, No. 10-

19 01044, 2011 U.S. Dist. LEXIS 6371, at *7-8 (N.D. Cal. Jan. 10, 2011) (dismissing

20 UCL, FAL, and CLRA claims as to products that plaintiff never purchased), *aff'd*,

21 2012 U.S. App. LEXIS 6851 (9th Cir. Apr. 5, 2012); *Johns v. Bayer Corp.*, No. 09-

22 1935, 2010 U.S. Dist. LEXIS 10926, at *13 (S.D. Cal. Feb. 9, 2010) (holding that

23 plaintiff "[could ]not expand the scope of his claims to include a product he did not

24 purchase or advertisements relating to a product that he did not rely upon").

25 **C.    Plaintiff Has Not Pleaded His Claims With The Requisite Particularity**

26 Plaintiff does not plead his UCL, FAL, or CLRA claims with the particularity

27 required by Rule 9(b).  *See Kearns*, 567 F.3d at 1124-26 (applying Rule 9(b) to UCL

28 and CLRA claims); *Vess*, 317 F.3d at 1105 (same for CLRA claims).  The FAC merely

1   alleges that Plaintiff "regularly purchased SoBe Beverages over the last 3-4 years,"

2   that his most recent purchase occurred in December 2011 at a "Vons supermarket in

3   Corona, California," and that his remaining purchases occurred "in the county of

4   Riverside, as well as other locations in California."  (FAC ¶ 12.)  There are no specific

5   allegations of **where** he purchased the SoBe beverages (save for the one time at Vons

6   supermarket in Corona), **how** much he paid for them (or the prices of comparable

7   beverages), or **when** (that is, how frequently) he bought **which** products.  These

8   deficiencies warrant dismissal.  *See, e.g., Yumul v. Smart Balance, Inc.*, 733 F.

9   Supp. 2d 1117, 1124 (C.D. Cal. 2010) (explaining that an allegation that a plaintiff

10  purchased a product "repeatedly," yet which "does not allege with any greater

11  specificity the dates on which the purchases were made" nor the "retailer or retailers"

12  where the purchases were made, fails to provide the requisite specificity).

13          Private plaintiffs alleging UCL, FAL, and CLRA actions also must plausibly

14  allege "that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's

15  conduct by showing that in its absence the plaintiff 'in all reasonable probability'

16  would not have engaged in the injury-producing conduct."  *In re Tobacco II Cases*, 46

17  Cal. 4th 298, 326, 93 Cal. Rptr. 3d 559 (2009) (citation and quotation marks omitted);

18  *Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1108, 138 Cal. Rptr. 3d 108 (2012)

19  ("[T]he CLRA . . . require[s] proof of causation and damages.").

20          Here, Plaintiff merely alleges that he "relied on the representations that the SoBe

21  Beverages were 'All Natural'" and that "[t]hese representations were material to

22  Plaintiff and played a substantial part in influencing his decision to buy the SoBe

23  Beverages."  (FAC ¶ 12.)  These boilerplate statements do not provide the requisite

24  allegations of "when he was exposed to [the alleged misrepresentations] or which ones

25  he found material."  *Kearns*, 567 F.3d at 1126.  Nor does Plaintiff "set forth *what* is

26  false or misleading about a statement, and *why* it is false."  *In re GlenFed, Inc. Sec.*

27  *Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphases added); *see also Briseno v.*

28  *ConAgra Foods, Inc.*, No. 11-05379-MMM, 2011 U.S. Dist. LEXIS 154750, at *37-38

1 (C.D. Cal. Nov. 23, 2011) (failure to "allege . . . whether the statements remained the

2 same throughout the class period, or, if they did not, on which label(s) . . . or

3 statement(s) [plaintiff] relied" does not satisfy Rule 9(b)).

4      In short, Plaintiff's UCL, FAL, and CLRA allegations fail because he did not

5 plead the requisite details of his purchases or reliance in accordance with Rule 9(b).

## D. Plaintiff Cannot Establish "Unlawful" Or "Unfair" Conduct, Or Any Violation Of The CLRA

8      Plaintiff's conclusory claims under the "unlawful" and "unfair" prongs of the

9 UCL also fail as a matter of law. (FAC ¶¶ 64-65.) Alleged regulatory violations

10 cannot support a claim for "unlawful" business practices, because the FDCA expressly

11 vests exclusive enforcement authority in the FDA (21 U.S.C. § 337(a)), and Plaintiff

12 may not use the UCL to overcome this bar. *See*, *e.g.*, *Fraker v. KFC Corp.*, No. 06-

13 01284, 2007 U.S. Dist. LEXIS 32041, at *10-11 (S.D. Cal. Apr. 30, 2007); *Summit*

14 *Tech.*, *Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 316-17 (C.D. Cal.

15 1996). Plaintiff also cannot invoke California's Sherman Food, Drug, and Cosmetic

16 Law (Cal. Health & Saf. Code § 110100) as a basis for his "unlawful" business

17 practices claim (*see* FAC ¶ 64), because that law simply "incorporates 'all food

18 labeling regulations and any amendments to those regulations adopted pursuant to the

19 [FDCA]'" as "the food labeling regulations of this state.'" *In re Farm Raised Salmon*

20 *Cases*, 42 Cal. 4th 1077, 1087, 72 Cal. Rptr. 3d 112 (2008) (quoting Cal. Health & Saf.

21 Code § 110100(a)). The SoBe labels comply with federal law, and Plaintiff never

22 alleges otherwise.[6]

_____

23

24 [6] At any rate, the Sherman Law cannot supply the necessary basis for a claim; while *Farm Raised Salmon Cases* determined that a claim was "independent" of the

25 FDCA because it invoked the Sherman Law's provisions that were identical to the FDA's requirements, *id.* at 1083, that Court did not identify any basis for inferring

26 a federal private damages remedy based on violations of either the FDCA or state statutes that incorporate the FDCA by reference. The FDCA and related

27 regulations do not allow for private rights of action to enforce their mandates (*supra* p. 7), and Plaintiff may not use the UCL/FAL to circumvent this prohibition, nor

28 should this Court defer to a state court's erroneous interpretation of a federal statute

[Footnote continued on next page]

Plaintiff's allegations also do not support a claim for "unfair" business practices under any definition of this term:  (1) the challenged conduct does not "significantly threaten[] or harm[] competition" or risk an "incipient violation" of antitrust law or policy (*Churchill Vill., L.L.C. v. G.E. Co.*, 169 F. Supp. 2d 1119, 1130 & n.10 (N.D. Cal. 2000)); (2) in balancing Defendants' conduct (including ingredients that were fully disclosed) against the alleged "harm to the consumer" (an alleged regulatory violation that caused no harm), the balance tilts strongly in Defendants' favor (*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736-37 (9th Cir. 2007)); and (3) the labeling does not "offend[] an established public policy" (*People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530, 206 Cal. Rptr. 164 (1984)).

Finally, Plaintiff did not provide proper notice for his CLRA claim, which seeks money damages and restitution.  (FAC ¶ 54.)  To assert a claim for money damages under this law, Plaintiff was required to comply with the strict 30-day, pre-litigation notice-and-demand requirement.  Cal. Civ. Code § 1782.  The purpose of the CLRA's pre-filing notice provision "is to provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished."  *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41, 124 Cal. Rptr. 852 (1975).

Here, Plaintiff sent his CLRA notice-and-demand letter on March 12, 2012, almost one month *after* filing his original complaint, which also sought monetary relief (restitution) under the CLRA.  (FAC, Ex. F; Compl. [ECF No. 1] ¶ 51.)  "[A] restitution claim brought under the CLRA is a claim for damages and requires proper notice."  *Ries v. Hornell Brewing Co.*, No. 10-01139, 2011 U.S. Dist. LEXIS 36845, at *15 (N.D. Cal. Apr. 4, 2011); *see also Shein v. Canon U.S.A., Inc.*, No. 08-07323-

[Footnote continued from previous page]
when that interpretation does not bind federal courts.  *See, e.g., Fraker*, 2007 U.S. Dist. LEXIS 32041, at *10-11 ("To overlay the state law tort system over the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties.").

CAS, 2009 U.S. Dist. LEXIS 131519, at *20-21 (C.D. Cal. June 22, 2009).[7]
Therefore, because the original complaint sought "damages" within the meaning of the
CLRA without *any* pre-litigation notice, Plaintiff failed to comply with the intent or
the text of the CLRA's pre-filing notice provision, and his claims for actual damages
and restitution should be dismissed with prejudice.  *See Laster*, 2008 U.S. Dist. LEXIS
103712, at *52 (dismissing CLRA restitution and actual damages claims with
prejudice because "the notice requirement applies to monetary damages, regardless of
whether such damages are calculated based upon the unjust enrichment of Defendant
or the Plaintiffs' loss").

## VI.   PLAINTIFF FAILS TO STATE A FEDERAL WARRANTY ACT CLAIM

Plaintiff's final claim under the MMWA fails for a very basic reason:  he has not
alleged sufficient facts to establish that statements on the SoBe labels created a
"written warranty" within the meaning of the Act.  The MMWA narrowly defines
"written warranty" as:

> (A) any written affirmation of fact or written promise made in connection
> with the sale of a consumer product by a supplier to a buyer which relates to
> the nature of the material or workmanship *and affirms or promises that such
> material or workmanship is defect free or will meet a specified level of
> performance over a specified period of time*, or

> (B) any undertaking in writing in connection with the sale by a supplier of a
> consumer product *to refund, repair, replace, or take other remedial action
> with respect to such product* in the event that such product fails to meet the

---

[7] While some district courts have reached a different conclusion, *see*, *e.g.*, *Henderson
v. Gruma Corp.*, No. 10-04173-AHM, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal.
Apr. 11, 2011), these decisions did not recognize, as another court explained, that
"[t]o interpret Section 1782's notice requirement for 'damages' to be limited to
'actual damages' would render the word 'actual' in Section 1780 [setting forth
forms of relief] redundant," and "if the Legislature intended Section 1782's
reference to 'damages' to include *only* 'actual damages,' it is unclear why it would
specifically exempt *only* injunctive relief from the notice requirement in
Section 1782(d)."  *Laster v. T-Mobile USA, Inc.*, No. 05-1167, 2008 U.S. Dist.
LEXIS 103712, at *52 (S.D. Cal. Aug. 11, 2008), *aff'd on other grounds*, *Laster v.
AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd on other grounds by
AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011).

specifications set forth in the undertaking . . . .

15 U.S.C. § 2301(6) (emphases added).[8]

The SoBe beverage labels do not fall within the first definition because they neither promise a defect-free product, nor guarantee a level of performance over a specific time period.  (FAC, Exs. A-D.)  After all, the challenged statements—"ALL NATURAL [¶] WITH VITAMINS" and the beverage names—are "product descriptions" rather than promises that the waters are defect-free, or guarantees of specific performance levels.  *See, e.g., In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, MDL 1703, 2006 U.S. Dist. LEXIS 100903, at *13 (N.D. Ill. May 17, 2006) (dismissing MMWA claim because "Made in USA" is a "product description," not a promise of performance).  But even if the labels somehow constituted such a "promise" or guarantee (which would strain any plausible reading of the words), they plainly do not "specify a level of performance over a specified period of time" and the MMWA claim fails for this reason alone.  *See, e.g., Skelton v. GM Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("A product information disclosure without a specified time period to which the disclosure relates is . . . not a written warranty."); *Kelley v. Microsoft Corp.*, No. 07-0475, 2007 U.S. Dist. LEXIS 66721, at *12-13 (W.D. Wash. Sept. 10, 2007) (dismissing MMWA claim because "Windows Vista Capable" stickers lack "temporal element" required to constitute warranties).  Nor may Plaintiff amend to allege these facts; the SoBe beverages, by nature, are meant to be consumed and not used repeatedly over time.

The labels also fail to satisfy the second part of the MMWA's definition of "written warranty" because they do not promise refund, repair, or replacement if the

---

[8]  This definition of "written warranty" is narrower than that of many state warranty laws and the Uniform Commercial Code.  *See, e.g.*, 16 C.F.R. § 700.3 (July 13, 1977) (acknowledging that "express warranties under the [UCC]" may not be "written warranties under this Act").  The legislative history reveals that the MMWA was intended to cover motor vehicles or appliances, and not food or beverage products.  119 Cong. Rec. 967 (Jan. 12, 1973) (Sen. Magnuson identified "automobiles, televisions, washers, dryers" as products of concern).

1   product fails to meet specifications.  *See* 15 U.S.C. § 2301(6)(B); *Semitekol v. Monaco*

2   *Coach Corp.*, 582 F. Supp. 2d 1009, 1027-28 (N.D. Ill. 2008) (rejecting claim where

3   no promise of refund or repair).

4        Plaintiff also faces an insurmountable contradiction in his MMWA claim.  The

5   MMWA is "inapplicable to any written warranty the making or content of which is

6   otherwise governed by Federal law."  15 U.S.C. § 2311(d).  But Plaintiff cannot deny

7   that the FDCA governs the statements made on the SoBe labels.  If Plaintiff both

8   (i) claims that the label statements are warranties and (ii) does not dispute that the

9   FDCA applies, then he cannot bring a claim under the MMWA.

10       Finally, Plaintiff has not complied with the pre-litigation notice required by the

11  MMWA.  *See id.* § 2310(e) (requiring the seller to be given a "reasonable opportunity

12  to cure such failure to comply" with a warranty obligation); *cf.* FAC, Ex. F (CLRA

13  notice).  Nor has he alleged that his individual claim exceeds "the sum or value of

14  $25," an essential element for federal jurisdiction over this claim.  *See* 15 U.S.C.

15  § 2310(d)(3); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 243-45 (2d Cir.

16  1986) (discussing MMWA jurisdictional requirements).

## VII.  CONCLUSION

18       Plaintiff's claims rest on a selective review of Defendants' labels and an

19  implausible view of deception and injury.  In compliance with federal law, the SoBe

20  beverages accurately described all of the product ingredients, and Plaintiff therefore

21  may not pursue his consumer deception, false advertising, and/or warranty claims.

22  Defendants respectfully request that the Court dismiss this action with prejudice.

24  DATED:  April 19, 2012            GIBSON, DUNN & CRUTCHER LLP

26                                   By: _____/s/_____
                                              Daniel W. Nelson

27                                   Attorneys for Defendants South Beach
                                     Beverage Company, Inc. and PepsiCo, Inc.

Gibson, Dunn &
Crutcher LLP