Rosemary Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
Danielle Stoumbos (SBN 264784)
dstoumbos@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

*Attorneys for Plaintiff Charles Hairston*
*and all others similarly situated*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CHARLES HAIRSTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH BEACH BEVERAGE COMPANY, INC.; PEPSICO, INC.,<br><br>Defendants. | Case No. 12-cv-01429-JFW-DTB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**Date:** May 21, 2012<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 16<br>**Judge:** The Hon. John F. Walter<br><br>**Action Filed:** February 21, 2012<br>**Trial Date:** Not Set |

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................. 1

II.  THE FACTS ALLEGED IN THE COMPLAINT ............................. 2

III.  LEGAL STANDARD ............................................................ 2

IV.  PLAINTIFF'S "ALL NATURAL" CLAIMS ARE NOT PREEMPTED ......... 3

V.  PLAINTIFF STATES CLAIMS UNDER THE UCL, FAL AND CLRA ......... 5

    A.  Plaintiff Has Sufficiently Alleged Facts Showing that Defendants' "All Natural" Claims are Likely to Deceive Reasonable Consumers ...... 5

    B.  Plaintiff Can Bring Claims for Products He Has Never Purchased that Have Similar Misrepresentations ....................................... 11

    C.  Plaintiff Has Adequately Pleaded His Claims with Particularity ........... 12

        1.  Defendant Failed to Meet and Confer with Respect to Its Rule 9(b) Argument ....................................................... 12

        2.  Plaintiffs' Allegations of Fraudulent Conduct Satisfy Rule 9(b) ................................................................... 13

    D.  Plaintiff Provided Proper Notice under the CLRA and Thus the CLRA Claim is Proper ........................................................ 17

VI.  THE FEDERAL WARRANTY ACT CLAIM IS ADEQUATELY PLED ..... 18

    A.  Standard under MMWA ..................................................... 18

    B.  Plaintiff has Pled a Written Warranty ..................................... 19

    C.  Plaintiff has Provided Notice and Pleads a MMWA Claim ................. 22

VII.  LEAVE TO AMEND SHOULD BE GRANTED TO CURE ANY DEFICIENCIES ................................................................ 23

VIII.  CONCLUSION ................................................................ 24

i

# TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Abraham v. Volkswagen of Am. Inc.*,
  795 F.2d 238 (2d Cir. 1986) ..................................................................... 22

*Alcatel-Lucent USA, Inc. v. Dugdale Communs., Inc.*,
  2009 WL 3346784 (C.D. Cal. Oct. 13, 2009) ......................................... 13

*Anunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005) ................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................... 3

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2011 WL 2111796 (N.D. Cal. May 26, 2011) ................................... 4, 5, 6

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ................................................... 15

*Bank of the W. v. Superior Court*,
  2 Cal. 4th 1254 (1992) .............................................................................. 14

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 3, 22

*Boelens v. Redman Homes, Inc.*,
  748 F.2d 1058 (5th Cir. 1984) .................................................................. 19

*Carideo v. Dell Inc.*,
  706 F.Supp.2d 1122 (W.D. Wash. 2010) ................................................. 11

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  2012 WL 1131526 (9th Cir. Apr.5, 2012) ................................................ 10

*Colgan v. Leatherman Tool Group, Inc.*,
  135 Cal. App. 663, 682 (2006) ................................................................... 6

*Comm. on Children's Tele., Inc.*,
  35 Cal. 3d 197 (1983) ............................................................................... 14

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) .................................................................... 13

*Cruz v. Beto*,
  405 U.S. 319 (1972) .................................................................................... 3

*Delahunt v. Cytodyne Tech.*,
  241 F. Supp. 2d 827 (S.D. Ohio 2003) .................................................... 15

*Doe v. U.S.*,
  58 F.3d 494 (9th Cir. 1995) ...................................................................... 23

*Dvora v. General Mills, Inc.*,
   2011 WL 1897349 (C.D. Cal. May 16, 2011) ......................................... 5

*Figueroa v. Gates*,
   2002 WL 31572968 (C.D. Cal. Nov. 15, 2002) ..................................... 13

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................ 23

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995) .................................................................. 9

*Henderson v. Gruma Corp.*,
   2011 WL 1362188 (C.D. Cal. April 11, 2011) ................................ 6, 17

*Hewlett–Packard v. Superior Ct.*,
   167 Cal. App. 4th 87 ............................................................................ 11

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ............................................................ 10

*Holk v. Snapple Beverage Corp.*,
   575 F.3d 329 (3d Cir. 2009) .................................................................. 4

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ......................................... 15, 16

*In re Kirchner*,
   1963 WL 66830 (Nov. 7, 1963) ........................................................... 11

*In re Mattel*,
   588 F. Supp. 2d ................................................................................... 17

*In re McDonald's French Fries Litig.*,
   503 F. Supp. 2d 953 (N.D. Ill. 2007) ................................................... 20

*In re Sears, Roebuck & Co.*,
   2006 WL 1443737 (N.D. Ill. May 17, 2006) ....................................... 20

*Jackson v. Balanced Health Prod., Inc.*,
   2009 WL 1625944 (N.D. Cal. June 10, 2009) ....................................... 4

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ....................................................................... 6, 7

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2008) ............................................................. 16

*Kelley v. Microsoft Corp.*,
   2007 WL 2600841 (W.D. Wash. Sept. 10, 2007) ............................... 21

*Kennedy v. Natural Balance Pet Foods, Inc.*,
   2007 WL 2300746 (S.D. Cal. Aug 8, 2007) ......................................... 17

iii

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

*Laster v. T-Mobile USA, Inc.,*
  2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) ......................................... 18

*Lavie v. Procter & Gamble Co.,*
  105 Cal. App. 4th 496 (2003).................................................................. 10, 11

*Leoni v. State Bar,*
  39 Cal. 3d 609 (1985)................................................................................. 6, 7

*Lockwood v. Conagra Foods, Inc.,*
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ..................................................... 4, 5

*London v. Coopers & Lybrand,*
  644 F.2d 811 (9th Cir. 1981)........................................................................... 9

*Lopez v. Professional Collection Consultants,*
  11-cv-3214, 2011 WL 4964886 (C.D. Cal. Oct. 19, 2011) ......................... 23

*Maronyan v. Toyota Motor Sales, U.S.A., Inc.,*
  658 F.3d 1038 (9th Cir. 2011)...................................................................... 22

*McKinnis v. Kellogg USA,*
  2007 WL 4766060 (Sept. 19, 2007) ............................................................ 10

*McKinniss v. Gen. Mills, Inc.,*
  2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ......................................... 5, 10

*McKinniss v. Sunny Delight Beverages Co.,*
  2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ................................................. 5

*Moore v. Kayport Package Express, Inc.,*
  885 F.2d 531 (9th Cir. 1989)........................................................................ 13

*Multimedia Patent Trust v. Microsoft Corp., et al,*
  525 F. Supp. 2d 1200 (S.D. Cal. 2007)........................................................ 15

*Nickoloff v. Wolpoff & Abramson, L.L.P.,*
  511 F. Supp. 2d 1043 (C.D. Cal. 2007) ....................................................... 23

*Outboard Marine Corp. v. Super. Ct.*
  52 Cal. App. 3d 30 n.2 (1975)...................................................................... 18

*Ries v. Hornell Brewing Co.,*
  2011 WL 1299286 (N.D. Cal. Apr. 4, 2011) ............................................... 18

*Schwiesow v. Winston Furniture Co., Inc.,*
  74 F. Supp. 2d 544 (M.D.N.C. 1999)........................................................... 22

*SEC v. Richie,*
  2006 U.S. Dist. LEXIS 57258 (C.D. Cal. Aug. 14, 2006)........................... 13

*Semitekol v. Monaco Coach Corp.,*
  582 F. Supp. 2d 1009 (N.D. Ill. 2008) .................................................... 21, 22

iv

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

*Shein v. Canon U.S.A., Inc.*,
   2009 WL 1774287 (C.D. Cal. June 22, 2009) .................................................. 18

*Singer v. Live Nation Worldwide, Inc.*,
   2012 WL 123146 (C.D. Cal. Jan. 13, 2012) .................................................. 13

*Skelton v. General Motors Corp.*,
   660 F.2d 311 n.7 (7th Cir. 1981)................................................................... 21

*Sugawara v. PepsiCo, Inc.*,
   2009 WL 1439115 (E.D. Cal. May 21, 2009)................................................. 10

*Trilegiant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006) ....................................................... 14

*True v. Am. Honda Motor Co.*,
   520 F. Supp. 2d 1175 (C.D. Cal. 2007) ....................................................... 15

*United States v. Webb*,
   655 F.2d 977 (9th Cir.1981)......................................................................... 23

*Utility Consumers' Action Network v. Sprint Solutions, Inc.*,
   2008 WL 1946859 (S.D. Cal. April 25, 2008)............................................... 17

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)................................................................ 13, 14

*Videtto v. Kellogg USA*,
   2009 WL 1439086 (E.D. Cal. May 21, 2009)................................................. 10

*Von Koenig v. Snapple Beverage Corp.*,
   713 F. Supp. 2d 1066 (E.D. Cal. 2010)........................................................ 4, 6

*Wang v. OCZ Techn. Group, Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) ................................................................. 11

*Werbel v. Pepsico, Inc.*,
   2010 WL 2673860 (N.D. Cal. July 2, 2010).................................................. 10

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008)................................................................. passim

*Wolph v. Acer Am. Corp.*,
   2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ......................................... 20, 23

*Wright v. General Mills, Inc.*,
   2009 WL 3247148 (S.D. Cal. Sept. 30, 2009)................................................. 4

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ......................................... 6, 16, 17

**Statutes**

15 U.S.C. § 2301(6)(A) .......................................................................... 19, 20, 21

v

15 U.S.C. § 2302(a) ................................................................................. 19
15 U.S.C. §§ 2301, *et seq.* ................................................................. 1, 18
15 U.S.C. §2301(1) ................................................................................. 19
21 U.S.C. section 343(c) ............................................................................ 4
Cal. Bus. & Prof. Code §§ 17200, *et seq.* ............................................ 1, 3
Cal. Bus. & Prof. Code §§ 17500, *et seq.* ............................................ 1, 3
Cal. Civ. Code §§ 1750, *et seq.* ............................................................... 1
Cal. Civil Code § 1782(b) .................................................................. 17, 18

**Rules**
Fed. R. Civ. P. 15 .................................................................................... 13
Fed. R. Civ. P. 9(b) ........................................................................ *passim*

**Regulations**
16 C.F.R. § 700.3 ............................................................................... 18, 21
7 C.F.R. § 205.605 ................................................................................... 8

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1 **I.     INTRODUCTION**

2      This is a class action lawsuit against South Beach Beverage Company, Inc. and

3 PepsiCo, Inc. (collectively, "Defendants") for their false and deceptive advertising of

4 their SoBe 0CaloriesLifewater beverages as "all natural" (the "Products").  As Plaintiff

5 explains in greater detail below, Defendants' motion to dismiss should be denied in its

6 entirety because it is based on a mischaracterization of Plaintiff's claims.  The

7 gravamen of Plaintiff's complaint is solely that Defendants' "all natural"

8 representations are false and misleading and likely to deceive reasonable consumers

9 because the Products contain ingredients that are synthetic and/or are created via

10 chemical processing.  Plaintiff does not challenge any other aspect of Defendants'

11 labeling.  As a number of other district courts and the Third Circuit have held, such "all

12 natural" claims are not preempted.  Further, Plaintiff's claims comply with Fed. R. Civ.

13 P. 9(b), as he has alleged the "who, what, when, where and how" and has also attached

14 the actual labels, which district courts have agreed is sufficient to meet Rule 9(b).

15      As to whether reasonable consumers are likely to be deceived, Plaintiff has

16 alleged sufficient facts to state claims under the Unfair Competition Law, Cal. Bus. &

17 Prof. Code §§ 17200, *et seq.* ("UCL"), the False Advertising Law, Cal. Bus. & Prof.

18 Code §§ 17500, *et seq.,* ("FAL") and the Consumers Legal Remedies Act, Cal. Civ.

19 Code §§ 1750, *et seq.* ("CLRA").  Numerous district courts, following the Ninth

20 Circuit, have held that whether consumers are likely to be deceived is a question of fact

21 and have rejected attacks at the pleading stage on "all natural" claims similar to

22 Plaintiff's.  The Court should do the same here.

23      Plaintiff has also complied with the notice requirements under the CLRA.  Before

24 amending his complaint for damages, Plaintiff served the required notice and

25 Defendants had the opportunity to cure but did not.  Finally, Plaintiff states a claim for

26 violation of the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

27 ("MMWA"), which applies to food products.  Specifically, Plaintiff has identified a

28

1 "written affirmation of fact or written promise made in connection with the sale" of the

2 Product "which relates to the nature of the material or workmanship and affirms or

3 promises that such material or workmanship is defect free," *i.e.*, all natural and not

4 containing any synthetic ingredients.  For these and other reasons, Plaintiff respectfully

5 requests that the Court deny Defendants' motion to dismiss.

6 **II.   THE FACTS ALLEGED IN THE COMPLAINT**

7        Consumers are increasingly demanding "all natural" foods and beverages which

8 created a lucrative market of $39 billion in 2010 alone.  *See* First Amended Complaint

9 ("FAC") ¶ 15.  Fifty-eight percent of U.S. adults buy food products marketed as "all

10 natural," which is the most popular tag on food labels.  *Id.* at ¶ 16.   In an effort to

11 capitalize on this burgeoning market, Defendants market the Products as "all natural" in

12 prominent lettering on the very front of their labels.  *Id.*; Exhs. A-D.

13        Plaintiff alleges that Defendants' prominent use of the phrase "all natural" is false

14 and/or misleading because several of the ingredients contained in the Products are not

15 natural, but synthetic, and/or are made in a laboratory, including but not limited to:

16 ascorbic acid, cyanocobalamin, calcium pantothenate, niacinmide, pyridoxine

17 hydrochloride, and xanthan gum.  *Id.* at ¶¶ 5-9, 22-35.  Plaintiff does not challenge

18 Defendant's labeling of vitamins, the use of vitamins in the product, or the fruit name

19 on the label as deceptive on their own.  Rather, Plaintiff alleges only that Defendants'

20 prominent use of fruit names and vitamins on the front of the Products' labels supports

21 the reasonableness of a consumers' belief that the ingredients in the Products are "all

22 natural."  *Id.* at ¶ 5.

23        Plaintiff seeks an order requiring Defendants to, among other things: (1) cease

24 the unlawful marketing alleged in the complaint; (2) conduct a corrective advertising

25 campaign; and (3) pay damages and restitution to Plaintiff and the Class.  FAC, Prayer.

26 **III.   LEGAL STANDARD**

27        On a motion to dismiss, the factual allegations of the complaint must be accepted

28

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1  as true.  *Cruz v. Beto*, 405 U.S. 319 322 (1972).  The court is bound to give the plaintiff

2  the benefit of every reasonable inference to be drawn from the well-pleaded allegations

3  of the complaint.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  A plaintiff need

4  not allege "specific facts beyond those necessary to state his claim and the grounds

5  showing entitlement to relief."  *Id.*  "A claim has facial plausibility when the plaintiff

6  pleads factual content that allows the court to draw the reasonable inference that the

7  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

8  (2009).  The court may not dismiss a complaint in which the plaintiff has alleged

9  "enough facts to state a claim to relief that is plausible on its face." *Id.* at 697.  Only

10  where a plaintiff has failed to "nudge [his or her] claims across the line from

11  conceivable to plausible," is the complaint properly dismissed.  *Id.* at 680.  While the

12  plausibility requirement is not akin to a probability requirement, it demands more than

13  "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

14  inquiry is a "context-specific task that requires the reviewing court to draw on its

15  judicial experience and common sense." *Id.* at 679.

16  **IV.    PLAINTIFF'S "ALL NATURAL" CLAIMS ARE NOT PREEMPTED**

17      In an effort to obtain dismissal of Plaintiff's claims on preemption grounds,

18  Defendants mischaracterize Plaintiff's factual allegations and causes of action.  As

19  Plaintiff explained to Defendant during the meet and confer required by Local Rule 7-3,

20  the gravamen of Plaintiff's complaint is that Defendants misrepresented their Products

21  as "all natural" when they are not.  FAC ¶¶ 7, 12, 18, 43(a), 51, 58, 63, and 76

22  ("Defendants violated [the CLRA] by representing that SoBe Beverages are "All

23  Natural," when they are not"; "Defendants engaged in unlawful, unfair, and/or

24  fraudulent conduct under California Business & Professional Code §§ 17500, *et seq.*, by

25  representing that SoBe Beverages are 'All Natural,' when they are not"; "Defendants

26  engaged in unlawful, unfair, and/or fraudulent conduct under California Business &

27  Professions Code §§ 17200, *et seq.,* by representing that SoBe Beverages are "All

28

Natural," when they are not"; "[Defendants] prominently affirm[ed] and promis[ed] in writing on the labeling of the SoBe Beverages that the SoBe Beverages were "all natural[.]""). Plaintiff also explained during the meet and confer that he does not challenge anything else on Defendant's labeling, either with regard to the use of fruit names or the manner in which it labels its vitamins. The allegations described above support Plaintiff's position.

Defendants' strategy in mischaracterizing Plaintiff's claims is obvious: they want to avoid the plethora of district court decisions holding that "all natural" or "100% natural" misrepresentation claims, like those here, are not preempted by the National Labeling and Education Act ("NLEA"). *See Astiana v. Ben & Jerry's Homemade, Inc.,* 2011 WL 2111796, *10 (N.D. Cal. May 26, 2011) (denying motion to dismiss on preemption grounds and stating, "there is no indication of any regulation of the use of an adjective such as "natural" on a food label); *Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d 1028, 1031-35 (N.D. Cal. 2009) (rejecting preemption arguments and upholding claims alleging that pasta sauce was not "all natural" because it contained fructose corn syrup); *Wright v. General Mills, Inc.,* 2009 WL 3247148, at *2-4 (S.D. Cal. Sept. 30, 2009) (rejecting express, field, conflict preemption and primary jurisdiction arguments; "100% Natural" claims upheld); *Holk v. Snapple Beverage Corp.,* 575 F.3d 329, 342 (3d Cir. 2009) ("natural" claims not preempted); *Jackson v. Balanced Health Prod., Inc.,* 2009 WL 1625944, *4 (N.D. Cal. June 10, 2009) ("all natural" claims not preempted); *Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010) (same); *see also Briseno v. Conagra Foods, Inc.,* No. 2:11-cv-05379 MMM-AGR, Slip. Op. at 21 (C.D. Cal. Nov. 23, 2011) (same) (attached as Exh. A to Plaintiff's accompanying Request for Judicial Notice ("P's RJN")).

As the above decisions have correctly found, the NELA prohibits a state from "establishing any requirement for the labeling of food that is required by 21 U.S.C. section 343(c), unless such requirement is identical to the federal requirement."

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1  *Lockwood,* 597 F. Supp. 2d at 1031.  The Food & Drug Administration ("FDA"),

2  however, has not regulated the use of the word "natural" and to date has declined to

3  engage in formal rulemaking on the issue.  *Id.* at 1033; *see also Astiana,* 2011 WL

4  2111796, at *10.   Accordingly, Plaintiff's "all natural" claims are not preempted.

5         The decisions Defendants cite are factually distinct and therefore do not compel a

6  different result.  *Dvora v. General Mills, Inc.,* 2011 WL 1897349 (C.D. Cal. May 16,

7  2011), did not involve "all natural" claims; rather the plaintiffs there alleged that the

8  "Total Blueberry Pomegranate" label on the cereal were false and misleading because

9  the cereal did not contain blueberries or pomegranates.  *Id.* at *1.  In finding that the

10  claims in *Dvora* were preempted, the court distinguished the facts there from other

11  (non-preempted) cases, like here, where the claims were based on "natural"

12  characterizations.  *Id.* at *7.  The other cases Defendants cite are similarly

13  distinguishable and irrelevant to this case.  *McKinniss v. Gen. Mills, Inc.,* 2007 WL

14  4762172, *16 (C.D. Cal. Sept. 18, 2007) (did not involve any allegations that defendant

15  misrepresentation products as "all natural"); *McKinniss v. Sunny Delight Beverages*

16  *Co.,* 2007 WL 4766525, *11 (C.D. Cal. Sept. 4, 2007) (did not involve allegations that

17  defendant misrepresented product as "all natural").   Accordingly, Defendants'

18  preemption arguments on pages 7-13 should be rejected.

19  **V.    PLAINTIFF STATES CLAIMS UNDER THE UCL, FAL AND CLRA**

20       **A.    Plaintiff Has Sufficiently Alleged Facts Showing that Defendants' "All**

21             **Natural" Claims are Likely to Deceive Reasonable Consumers**

22         Plaintiff's claims for violations of the UCL, FAL and CLRA are governed by the

23  "reasonable consumer standard."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th

24  Cir. 2008).  Under this test, the alleged false or misleading advertising or practices are

25  judged from the reasonable consumer's point of view.  *Id.*  Plaintiff must only allege

26  facts showing that "reasonable consumers are likely to be deceived."  *Id.*  Dismissing

27  UCL, FAL and CLRA claims at this stage is rarely appropriate.  *Id.* at 939.

28

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1   Under the UCL, FAL and CLRA, even representations that are literally true may
2   be misleading and likely to deceive reasonable consumers. *Kasky v. Nike, Inc.*, 27 Cal.
3   4th 939, 951 (2002); *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985); *Williams*, 552 F.3d
4   at 939 (food package could still be misleading and deceptive if nutritional label
5   complied with FDA regulations); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117,
6   1129 (C.D. Cal. 2010) (manufacturer cannot rely on small print nutritional label to cure
7   misrepresentations contained elsewhere on package); *see also Delacruz v. Cytosport,*
8   *Inc.*, No. 11-cv-3532 CW, Slip Op. at 13 (Dkt. No. 34) (N.D. Cal. April 11, 2012)
9   (same) (attached as Exh. B to P's RJN).  Moreover, a "reasonable consumer" is not
10  considered from the view point of someone versed in the art of inspecting and judging a
11  product. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 663, 682 (2006).

12   Defendants' argument that the "all natural" representations are not likely to
13  deceive reasonable consumers defies the principle that whether reasonable consumers
14  are likely to be deceived is generally a question of fact, not appropriate for decision on
15  a motion to dismiss. *Williams*, 552 F.3d at 938-939.  In fact, numerous district courts
16  have denied such motions to dismiss in similar cases. *Astiana*, 2011 WL 2111796, at
17  *4 (alkalized cocoa in ice cream and frozen yogurt deceptively labeled "all natural");
18  *Briseno,* Slip. Op. at 21 (Exh. A to P's RJN) (genetically modified ingredients in
19  cooking oil deceptively labeled 100% natural); *Von Koenig*, 713 F. Supp. 2d at 1071,
20  1079-80 (high fructose corn syrup in beverages deceptively labeled "All Natural");
21  *Henderson v. Gruma Corp.*, 2011 WL 1362188, *11 (C.D. Cal. April 11, 2011) (trans
22  fat in guacamole and bean dip deceptively labeled "all natural").

23   In *Williams*, the plaintiffs alleged that the use of the phrase "fruit snacks"
24  alongside images of oranges, strawberries and cherries on a product's packaging was
25  likely to deceive reasonable consumers because the only fruit in the product was white
26  grape juice from concentrate. *Id.* at 936.  The Ninth Circuit analyzed the product's
27  packaging and held that reasonable consumers could be deceived because: (1) the
28

6

1  product represented it was "made with 'fruit juice and other all natural ingredients'

2  [which] could easily be interpreted by consumers as a claim that all the ingredients in

3  the product were natural" (2) the product was called "fruit juice snacks" and depicted

4  pictures of different fruits, falsely suggesting that those fruits were contained in the

5  product; and (3) the product claimed to be "just one of a variety of nutritious . . . foods

6  and juices." *Id.* at 938-39.

7         As in *Williams*, there are a number of aspects of the Products' packaging here

8  that are likely to deceive reasonable consumers into believing the Products are "all

9  natural." First, the Products are prominently labeled "all natural." FAC, Exh. A-D.[1]

10 Further, the statements "macintosh apple cherry," "strawberry apricot," "black cherry

11 dragonfruit," and "strawberry kiwi lemonade," "with other natural flavors" could easily

12 be interpreted by consumers as a claim that all the ingredients in the product were

13 natural.[2]

14         Moreover, the front label states that the Products contain vitamins such as "B6,"

15 and "C," which are naturally found in fruits.[3]  The product line is called "Lifewater,"

16 suggesting that the Products are healthy and promote hydration.  Defendants also tout

17

18 _____

19 [1] Reasonable consumers would believe the phrase "with B vitamins" and "with
   vitamins" in small print below the phrase "all natural" means that all ingredients in the
20 Products are "all natural," including the vitamins.  Moreover, even literally true
   statements can deceive. *Kasky*, *supra*; *Leoni, supra*.
21

22 [2] As explained *supra*, Plaintiff does not allege that the Products are deceptive because
   of the fruit names, and instead only challenges the claim that the Products are "all
23 natural" and that reasonable consumers are likely to be deceived in light of the fruit
   names of the Products.
24

25 [3] *See http://health.nytimes.com/health/guides/nutrition/vitamin-b6/overview.html*
26 (vitamin B6);
   *http://www.nytimes.com/imagepages/2007/08/01/health/adam/18109VitaminCsource.ht*
27 *ml* (vitamin C).

28

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1   the electrolytes contained in its Products (FAC, Exhs. A-D), and the fruits for which

2   these Products are named (*i.e.* apples, kiwis, cherries, and strawberries) naturally

3   contain certain electrolytes including sodium, magnesium, potassium, and calcium.

4   Accordingly, reasonable consumers would expect the Products to contain only "all

5   natural" ingredients, and would not expect the Products to contain synthetic ingredients

6   manufactured in a laboratory.  These representations, when construed in conjunction

7   and as a whole, as the Court did in *Williams*, render the Product's "all natural"

8   representations deceptive and likely to deceive reasonable consumers.

9        The FDA's guidelines are in line with Plaintiff's position.  The FDA considers

10  foods and beverages labeled "natural" to be truthful and non-misleading when "nothing

11  artificial or synthetic . . . has been included in, or has been added to, a food that would

12  not normally be expected to be in the food."  FAC, Exh. E (FDA Warning Letter to

13  Alexia Foods, Inc. dated November 16, 2011).  For example, according to the FDA, it

14  would even be deceptive and misleading to label pink lemonade "natural" if the pink

15  hue is derived from beet juice.  56 Fed. Reg. 60421-01, 1991 WL 250815 (Nov. 27,

16  1991).  In this case, reasonable consumers would not expect xanthan gum, a known

17  synthetic substance used as a thickening agent, to be added to water.[4]  Therefore,

18  Plaintiff has sufficiently alleged facts showing that reasonable consumers are likely to

19  be deceived.

20       Defendants' arguments are unconvincing.  Defendants' addition of "with

21  vitamins" in small print under its "all natural" claim does not alert a reasonable

22

23  [4] Defendants' argument that xanthan gum is "organic" is irrelevant.  Xanthan gum is

24  listed on the synthetics list, not the organics list, in the National Organic Program.  7

25  C.F.R. § 205.605 (Dec. 21, 2000).  Furthermore, consumers expect that an "organic"
    product is pesticide free, and that a "natural" product is "composed only of substances

26  that are not manmade and is, therefore, somehow more wholesome."  56 Fed. Reg.

27  60421-01, 1991 WL 250815 (Nov. 27, 1991).  Thus, whether xanthan gum is
    considered "organic," is irrelevant as it is not "natural."

28

8

1  consumer that the Products contain added synthetic ingredients processed in a

2  laboratory.  Regardless, determination of that issue requires discovery and/or expert

3  testimony and is inappropriate for dismissal at this stage.  Moreover, Defendants'

4  analogy in its MTD is flawed.  Def. MTD at 14.  When the "all natural" language used

5  on Defendants' packaging is added to Defendants' analogy, the analogy is no longer

6  convincing.  Thus, reasonable consumers would read "***all natural** vanilla ice cream*

7  *with fudge*" to mean that both the vanilla ice cream and fudge were all natural, and

8  would not read it to mean "vanilla ice cream with vanilla fudge."[5]

9        As to Defendants' argument that consumers should have read the small print

10  elsewhere on the package, *Williams* rejected this argument:

11              We disagree with the district court that reasonable consumers should be
       expected to look beyond misleading representations on the front of the box to
12       discover the truth from the ingredient list in small print on the side of the box.
       . . . We do not think that the FDA requires an ingredient list so that
13       manufacturers can mislead consumers and then rely on the ingredient list to
       correct those misinterpretations and provide a shield for liability for the
14       deception.  Instead, reasonable consumers expect that the ingredient list
       contains more detailed information about the product that confirms other
15       representations on the packaging.

16  *Id.* at 939-40.[6]

17

18  _____

19  [5] Defendants' citations to the original complaint are improper, *see* Def. MTD p. 17, as
    Plaintiff's FAC, supersedes the original complaint, rendering the original complaint of
20  no legal effect.  *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981).

21  [6] Defendants rely on a statement printed in white ink at the bottom of its clear bottles
22  that the Products are a "nutrient enhanced hydration beverage."  It is unlikely that
    reasonable consumers can even see this statement because it is written in white print
23  and blends in with the label's white background, in contrast to the bold lettering of the
24  phrase "all natural."  Defendants' reliance on *Freeman v. Time, Inc.*, 68 F.3d 285 (9th
    Cir. 1995) is misplaced as there, the language on a sweepstakes mailer "expressly and
25  repeatedly stated the conditions which must be met in order to win," and the recipient
26  would only be deceived if he/she made an inference.  *Id.* at 289-90.  Here, the phrase
    "all natural" is represented in bold, large letters.  No inferences need be made for a
27  reasonable consumer to believe the Products only contain all natural ingredients.
28                                                    [Footnote continued on next page]

9

The cases Defendants cite are factually distinguishable. *Werbel v. Pepsico, Inc.*, 2010 WL 2673860, *3 (N.D. Cal. July 2, 2010) (reasonable consumer would not infer that cereal containing "crunch berries" actually contained fruit as there is no fruit known as "crunch berry"); *Sugawara v. PepsiCo, Inc.*, 2009 WL 1439115, *3 (E.D. Cal. May 21, 2009) (same); *McKinnis v. Kellogg USA*, 2007 WL 4766060, * 4 (Sept. 19, 2007) (reasonable consumer would not infer product called "Froot Loops" with picture of multi-colored rings, that did not resemble any known fruit, would actually contain fruit); *Videtto v. Kellogg USA*, 2009 WL 1439086, *3 (E.D. Cal. May 21, 2009) (same); *McKinniss*, 2007 WL 4762172, at *3 (decided prior to Ninth Circuit's decision in *Williams*; finding that absent any false statements on defendant's packaging, reasonable consumer would not infer cereals and yogurt contained fruit); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 1131526, *1 (9th Cir. Apr., 2012) (reasonable consumer would not infer that defendant's ice cream packaging stating "The Original" and "Classic" implied product was "nutritious" or "wholesome"); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (reasonable consumer would not infer green raindrop on product's packaging meant the product was endorsed by an independent third party as environmentally superior); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 500 (2003) (ads that defendant's product was "gentler to the stomach lining than asprin" would not deceive reasonable consumers to believe the product prevented upset stomachs).[7] Reviewing the factual allegations in the light most

---

[Footnote continued from previous page]
*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, is factually inapposite. 653 F.3d 241, 245 (3d. Cir. 2011) (product brand name "Havana Club" not deceptive because product's true geographic origin was clearly displayed immediately below product name). Here, Defendants did not disclose that the vitamins are synthetic immediately below the "all natural" representation.

[7] Defendants factually misapply a Federal Trade Commission ("FTC") opinion to this case. *See In re Kirchner*, 63 F.T.C. 1282, 1963 WL 66830, *6 (Nov. 7, 1963) (cited in
[Footnote continued on next page]

10

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1  favorable to the Plaintiff, the Court should deny Defendants' motion to dismiss.

2      **B.**    **Plaintiff Can Bring Claims for Products He Has Never Purchased that**

3      **Have Similar Misrepresentations**

4        Plaintiff may seek to represent a class of persons with regard to a product he has

5  never purchased so long as his claims are based on the "'same core factual allegations

6  and causes of action.'" *Wang v. OCZ Techn. Group, Inc.*, 276 F.R.D. 618, 632-33 (N.D.

7  Cal. 2011) (rejecting Dell's argument that plaintiffs' claims with respect to computer

8  models they did not purchase should be dismissed); *see also Carideo v. Dell Inc.*, 706 F.

9  Supp. 2d 1122, 1134 (W.D. Wash. 2010) (finding standing for multiple products not

10  purchased by plaintiff where causes of action and factual allegations were the same);

11  *Hewlett–Packard v. Superior Ct.*, 167 Cal. App. 4th 87, 89–91 (2008) (finding standing

12  for several models where plaintiff only had purchased one model). Here, Plaintiff seeks

13  to represent a class of consumers who have purchased the same product (SoBe 0

14  Calories Lifewater), just in a different flavor (strawberry apricot). The strawberry

15  apricot flavor has the same "all natural" misrepresentation and same alleged non-natural

16  ingredients (*i.e.* xanthan gum, ascorbic acid, niacinamide, calcium pantothenate,

17  pyridoxine hydrochloride, etc.) as the products Plaintiff has purchased. Further,

18  Plaintiff's claims for violations of the CLRA, UCL, FAL and MMWA relate to all of

19

20  _____

[Footnote continued from previous page]

21  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507 (2003)). There, the FTC
Commissioner held a reasonable consumer would not believe defendant's

22  advertisements that its product, a floatation device, meant to be worn under a bathing

23  suit was really invisible, as advertised. *Id.* at *5. The Commissioner there analogized

24  that situation to one in which only a foolish or feeble minded consumer would believe
Danish pastries are ***only*** made in Denmark and not elsewhere. *Id.* Here, Plaintiff's

25  claims that Defendant's Products, explicitly labeled as "all natural," named after fruits

26  and represented as including vitamins naturally occurring in fruits is incomparable to
consumers believing Danish pastries are only made in Denmark, or that a flotation

27  device is actually invisible.

28

1  the Products.  Therefore, Plaintiff's claims regarding the strawberry apricot beverage

2  are based on the same factual allegations, and same causes of action and are proper at

3  this stage of the proceedings.

4      **C.**     **Plaintiff Has Adequately Pleaded His Claims with Particularity**

5          **1.**     **Defendant Failed to Meet and Confer with Respect to Its Rule**

6               **9(b) Argument**

7       Under Local Rule 7-3, "counsel contemplating the filing of any motion shall first

8  contact opposing counsel to discuss thoroughly, preferably in person, the substance of

9  the contemplated motion and any potential resolution." C.D. Cal. Local Rule 7-3.[8]

10  Defendants, however, failed to raise the specific Rule 9(b) issues when they met and

11  conferred with Plaintiff on their instant Motion. *See* accompanying Declaration of

12  Rosemary M. Rivas Decl., ("Rivas Decl.") ¶ 2.  Rather, during the parties' meet-and-

13  confer process, Defendants' counsel took the position that all of Plaintiffs' claims

14  should be dismissed on preemption grounds, that Plaintiff did not comply with

15  *Twombly* and *Iqbal*, that the representations made by Defendants were not likely to

16  deceive reasonable consumers and that Plaintiff could not state a claim under the

17  MMWA.

18       The parties' meet-and-confer took place on March 22, 2012, before the FAC was

19  filed.  Rivas Decl., ¶ 2.  The parties specifically scheduled this meet-and-confer before

20  filing the FAC in order to minimize issues for the Court to decide on a 12(b)(6) motion.

21  If Defense counsel had stated, during the March 22, 2012 meeting that Defendants

22   

23  [8]  In fact this Court's standing order clearly states that "[m]any motions to dismiss or to strike could be avoided if the parties confer in good faith (as they are required to do

24  under the Local Rules).... Counsel should discuss the issues with sufficient detail so that if a motion is still necessary, the briefing may be directed to those substantive issues

25  requiring resolution by the Court.  Counsel should resolve minor procedural or other nonsubstantive matters during the conference."  This is "especially for perceived

26  defects in a Complaint, Answer or Counterclaim which could be corrected by amendment."  Standing Order ¶ 5(a).

27   

28   

1  intended to seek dismissal for failure to meet Rule 9(b)'s heightened pleading

2  requirements because Plaintiff failed to allege, for example, the price of the Products

3  and where he bought each Product, Plaintiff would have sought to address any and all

4  such concerns in drafting the FAC.

5       Failure to meet-and-confer on this aspect of the Motion as required by Local Rule

6  7-3 supports denial of the Motion on this point.  *See, e.g., Alcatel-Lucent USA, Inc. v.*

7  *Dugdale Communs., Inc.*, 2009 WL 3346784, *4 (C.D. Cal. Oct. 13, 2009) (denying

8  motion to dismiss since the "entire motion could have been avoided if Defendant had

9  met and conferred . . . . Thus, the motion is also denied for failure to comply with Local

10 Rule 7-3"); *SEC v. Richie*, 2006 U.S. Dist. LEXIS 57258, *5 (C.D. Cal. Aug. 14, 2006);

11 *see also Figueroa v. Gates*, 2002 WL 31572968, *3 (C.D. Cal. Nov. 15, 2002) (finding

12 failure to comply with Local Rule 7-3 sanctionable); *Singer v. Live Nation Worldwide,*

13 *Inc.*, 2012 WL 123146, *2 (C.D. Cal. Jan. 13, 2012).  At a minimum, the failure to meet

14 and confer underscores the need for leave to amend, which should be granted liberally

15 as discussed in Part VII below.  Fed. R. Civ. P. 15.

16        **2.    Plaintiffs' Allegations of Fraudulent Conduct Satisfy Rule 9(b).**

17       "The text of Rule 9(b) requires only that in '*all averments of fraud* . . . the

18 circumstances constituting fraud . . . shall be stated with particularity.'" *Vess v. Ciba-*

19 *Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (emphasis added).  The

20 particularity requirement is satisfied if the pleading "identifies the circumstances

21 constituting fraud so that a defendant can prepare an adequate answer from the

22 allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.

23 1989).  "[T]he plaintiff must set forth an explanation as to why the statement or

24 omission complained of was false or misleading." *Cooper v. Pickett*, 137 F.3d 616, 625

25 (9th Cir. 1997).  The rule does not require that allegations supporting a claim be stated

26 with particularity, however, "*when those allegations describe non-fraudulent conduct.*"

27 *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003) (emphasis added).

28

13

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1    Nevertheless, Plaintiff has alleged his claims with the specificity required by Rule 9(b).

2    The California Supreme Court has noted that, in "drafting [the UCL], the

3    Legislature deliberately traded the attributes of tort law for speed and administrative

4    simplicity.  As a result, to state a claim under the act one need not plead and prove the

5    elements of a tort.  Instead, one need only show that 'members of the public are likely to

6    be deceived.'" *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1266-67 (1992)

7    (internal citations omitted).  The California Supreme Court and numerous other courts

8    have consistently interpreted the UCL and CLRA broadly to sustain consumer

9    protection claims without requiring they be pleaded with Rule 9(b) particularity.[9]

10   Defendants' misrepresentations are likely to deceive consumers even if they were not

11   made with the knowledge of falsity or intent to induce reliance.  Accordingly, Rule 9(b)

12   is not applicable and Plaintiff's causes of action should stand.

13   To the extent Rule 9(b) does apply to Plaintiff's claims, it does not apply in the

14   same manner it might apply to a traditional fraud claim because "the elements of

15   common law fraud are not essential to a claim under the California unfair competition

---

17   [9] *Comm. on Children's Tele., Inc.*, 35 Cal. 3d 197, 211-12 (1983) ("The requirement
18   that fraud be pleaded with specificity . . . does not apply to causes of action under the
     consumer protection statutes"); *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1118 (C.D.
19   Cal. 2008) (Rule 9(b) did not apply to the plaintiff's UCL and CLRA claims were the
20   plaintiffs "merely allege[d] that the representations were likely to deceive and that
     [p]laintiffs were damaged by the deception; they make no effort to allege common law
21   fraud elements"); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1138 (C.D. Cal.
22   2005) (UCL false advertising claims can be asserted without implicating Rule 9(b));
     *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1097 (N.D. Cal. 2006) ("Rule 9(b)
23   is not strictly applicable to the current action as the CLRA is not a fraud statute . . . To
24   require that plaintiffs prove more than the statute itself requires would undercut the
     intent of the legislature in creating a remedy separate and apart from common-law
25   fraud"); *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D.
26   Cal. 2007) ("[T]o the extent that a federal pleading is grounded in fraud, it must meet
     the requirements of Rule 9(b) . . . [H]owever, the elements of common law fraud are not
27   essential to a claim under the California unfair competition law.").

28

law." *Multimedia Patent,* 525 F. Supp. 2d at 1217.  In particular, the reliance

requirements for such claims differ dramatically; to state a UCL claim, Plaintiff needs

only allege that Defendants' misrepresentations were "material." *E.g., True v. Am.*

*Honda Motor Co.*, 520 F. Supp. 2d 1175, 1182 (C.D. Cal. 2007); *see also In re Apple &*

*AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011)

("*In re iPad*"); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1269 (C.D. Cal.

2007) ("The fraud prong of the UCL differs from common law fraud or deception. . .

."). The same rule applies to claims under Plaintiff's CLRA claims. *True*, 520 F. Supp.

2d at 1182.  Finally, and most relevant here, knowledge and state of mind of a Plaintiff

is not subject to Rule 9(b).  *True*, 520 F. Supp. 2d at 1183.

In *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 839-41 (S.D. Ohio 2003),

the court determined that the complaint met the 9(b) requirements under both

nationwide unfair trade practice statutes and fraud.  The court found that the plaintiff's

inclusion of label information and reliance on the same was sufficient to satisfy 9(b) for

the fraud claim.  The court stated "[t]here is little more that the Plaintiff could have

alleged in her Complaint that would have clarified for the Defendants the basis of her

fraud claim." *Id.* at 841. With respect to the unfair trade practice claims, the *Delahunt*

court ruled that Plaintiff satisfied Rule 9(b) simply by clearly alleging the unfair trade

practice statutes on which she based her claim. *Id.* at 840.

Plaintiff here fully complies with the requirements of Rule 9(b), insofar as that

rule applies to the FAC at all.  Plaintiff is required to allege enough information so that

Defendant can defend against particular misconduct. *True*, 520 F. Supp. 2d at 1179.  In

order to do that, Plaintiff's detailed allegations fully cover the "'the who, what, when,

where, and how of the misconduct charged.'" *Id.* at 1179.  Plaintiff alleges Defendants

made the misrepresentations at issue since at least 2009 (the "when," FAC ¶ 3), that

Defendant made the misrepresentations at issue on the labels of its beverages, (the

"how," *id.* at ¶ 12), that Defendant made these misrepresentations under the brand name

1  SoBe to consumers in California and throughout the United States at grocery chains, big

2  box stores and convenient stores such as Vons, Safeway, Albertson's, Ralph's, Target

3  and Circle K, (the "where," *id.* at ¶ 13); and Plaintiff describes, in detail, Defendants

4  falsely stating that their Products are "all natural"  (the "what," *id.* at ¶¶ 19-39).

5  Plaintiff further alleges six specific, unnaturally processed, synthetic and/or non-natural

6  ingredients that render Defendant's "all natural" representations false, including

7  detailed allegations concerning the manufacturing processes used to create these

8  substances.  *Id.* at 22–35).  Plaintiff also alleges who made the misrepresentations

9  (Defendants), and who was misled: Consumers throughout the California like the

10  named Plaintiff.  *Id.* at ¶¶ 12, 15-18, 40.  Plaintiff further alleges, and explains in detail

11  why Defendants' misrepresentations are likely to mislead ordinary consumers, such as

12  the named Plaintiff.  The Plaintiff alleges that he purchased Defendants' beverages in

13  reliance on the misrepresentations.  *Id.* at ¶¶ 3, 12.

14         These allegations fully satisfy the requirements of Rule 9(b).  While Defendants

15  assert Plaintiff must allege where each beverage was purchased on what date for how

16  much money, there is no authority that would require such detail, and Defendant cites

17  none.  *Cf. In re iPad*, 802 F. Supp. 2d at 1075 (examining the sufficiency of including

18  general information in the complaint to satisfy 9(b)).

19         In support of its assertions that Plaintiff's claims should be dismissed under Rule

20  9(b), Defendant cites a number of cases in which plaintiffs totally failed to describe the

21  particular alleged misrepresentations at issue.  These cases do not apply to the facts

22  here.  For instance, in *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2008), the

23  plaintiff failed to "specify what the television advertisements or other sales material [at

24  issue] specifically stated."  *Id.* at 1126.  Here, by contrast, Plaintiff specifically alleges

25  what Defendants stated, and how those statements were false.  Defendants' reliance on

26  *Yumul* is also misguided because Plaintiff's complaint supplies the detail necessary to

27  meet 9(b).  *Yumul v. Smart Balance*, Inc., 733 F.Supp.2d 1117 (2010).  Unlike *Yumul*,

28

1  here Plaintiff specifies which precise products he bought and details one of his

2  purchases by month, year and retailer.  Plaintiff also supplies all of the necessary

3  information on the product packaging and the representations therein.  This is sufficient

4  to satisfy the "when, where, and how the alleged misrepresentations were

5  communicated." *Yumul*, 733 F. Supp. 2d at 1124.

6  **D.    Plaintiff Provided Proper Notice under the CLRA and Thus the CLRA**

7  **Claim is Proper**

8         Plaintiff's CLRA claims stand because a plaintiff may seek restitution and

9  injunctive relief under the CLRA before serving a demand notice, as restitution is not

10  considered "damages" under the CLRA.  *See In re Mattel*, 588 F. Supp. 2d at 1119

11  (restitution and disgorgement not considered damages for purposes of the CLRA);

12  *Henderson*, 2011 WL 1362188, at *10 (same); *Kennedy v. Natural Balance Pet Foods,*

13  *Inc.*, 2007 WL 2300746, at *2-4 (S.D. Cal. Aug 8, 2007); *Utility Consumers' Action*

14  *Network v. Sprint Solutions, Inc.*, 2008 WL 1946859, at *7 (S.D. Cal. April 25, 2008)

15  (same).  Plaintiff's original complaint here, filed on February 21, 2012, sought only

16  injunctive and equitable relief,[10] and informed Defendants that Plaintiff would send

17  notice before seeking damages.  Class Action Complaint, ¶¶ 51-52 (Docket No. 1.)

18  Plaintiff sent his CLRA notice for damages via certified mail on March 12, 2012, as

19  required by Cal. Civil Code § 1782(b) of which Defense counsel confirmed receipt.[11]

20  Defendants failed to cure in accordance with Plaintiff's notice; thus, Plaintiff properly

21  requests damages, restitution and injunctive relief under the CLRA.[12]

---

23  [10] Moreover, the equitable relief was available to Plaintiff under the UCL and FAL.
24  Therefore, to the extent the request for equitable relief under the CLRA was improper, which it was not, it was harmless.

25  [11] In fact, Defense counsel acknowledged receipt of the CLRA notice letter and
26  suggested Plaintiff file his amended complaint on April 12, 2012, 30 days after he sent notice of his CLRA letter.  Rivas Decl., ¶ 3.

27  [12] The cases Defendants cite are inapposite.  *Laster v. T-Mobile USA, Inc.*, 2008 WL
5216255, *17 (S.D. Cal. Aug. 11, 2008), is an anomaly, and other courts have called it
28                                                                    [Footnote continued on next page]

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

## VI.      THE FEDERAL WARRANTY ACT CLAIM IS ADEQUATELY PLED

The misrepresentations made by Defendants with respect to the Products sufficiently demonstrates a violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq*.   As set forth above, Plaintiff alleges that Defendants advertised and sold their waters with specific representations of facts which guaranteed certain qualities, including, for example, identifying ingredients in the ingredients list on each of the SoBe Beverages, and then prominently affirming and promising in writing on the labeling of the SoBe Beverages that the SoBe Beverages were "all natural".  *See* FAC ¶ 75-76; *see also* 16 C.F.R. § 700.3.  Further, this affirmation of fact created express written warranties under the MMWA, upon which consumers relied in making their decisions to purchase SoBe brand waters.  FAC ¶¶ 75-76.   Finally, Plaintiff alleges that Defendants breached the written warranties by failing to provide SoBe Beverages that actually conformed to the representations regarding their contents and quality – *i.e.*, were free of a particular type of defect.  *Id.* at ¶ 77.  In this context, the "defect" in an alleged all-natural product would be non-natural, synthetic or artificial ingredients.  *Id.*

### A.      Standard under MMWA

The MMWA was enacted "[i]n order to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products."  15 U.S.C. § 2302(a).  To that extent, the MMWA requires that

---

[Footnote continued from previous page]
"draconian."  *Shein v. Canon U.S.A., Inc.*, 2009 WL 1774287, *7 (C.D. Cal. June 22, 2009).  The plaintiff in *Outboard Marine Corp. v. Super. Ct.* wholly failed to comply with Cal. Civil Code § 1782(b), by serving a copy of a jury verdict in another case on Defendant's attorney, and serving a letter complying with § 1782(b) ***several months*** after litigation ensued.  52 Cal. App. 3d 30, 40 n.2 (1975).  Moreover, the court did not dismiss plaintiff's CLRA claim due to procedural defects, and instead dismissed it on separate grounds.  *Id.* at 41; *see also Ries v. Hornell Brewing Co.*, 2011 WL 1299286, *6 (N.D. Cal. Apr. 4, 2011) (although Plaintiff sought restitutionary relief in original complaint prior to giving notice under §1782(b), plaintiff could cure by providing notice and amending complaint).

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

where a manufacturer provides a warranty as to the quality of a consumer product, all disclosures therein must be specific and must be truthful, accurate, and written in "simple and readily understood language." *Id.*  The MMWA defines "written warranty" -- in pertinent part -- as:

> "any written **affirmation of fact** or written promise made in connection with the sale of a consumer product by a supplier to a buyer **which relates to the nature of the material** or workmanship and affirms or promises that such material or workmanship is defect free…, which written affirmation, promise, or undertaking **becomes part of the basis of the bargain** between a supplier and a buyer for purposes other than resale of such product."

15 U.S.C. § 2301(6)(A) (emphasis added).

The MMWA broadly defines covered consumer products as "any tangible personal property . . . normally used for personal, family or household purposes…." 15 U.S.C. §2301(1).  Moreover, the Federal Trade Commission, has made it clear that consumer products covered under the MMWA include "food."  40 Fed. Reg. 25721, 25722 (1975).[13]  In short, for a cause of action to arise under the MMWA, a plaintiff consumer must allege only that (i) the defendant made a representation of fact relating to the nature of a consumer product, which representation (ii) made assurances as to the quality of the product (*i.e.*, that it would be "all natural" or free of defects of artificiality); and (iii) the consumer relied upon such representation(s) in purchasing the product. *Id.*  Plaintiff alleged these facts here.  FAC ¶¶ 107-114.

**B.    Plaintiff has Pled a Written Warranty**

Defendants argue that their labels "neither promise a defect-free product, nor guarantee a level of performance over a specific time period." Def. MTD at 23.

---

[13]This regulation should be given "great weight" in determining whether a certain product, and its warranty, is covered by the MMWA. *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1063 (5th Cir. 1984).

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1  Defendant is wrong on both counts and the MMWA does apply in this case because

2  descriptions of contents or qualities of food constitute written warranties.

3        The representations made by Defendant with respect to the "all natural" contents

4  of the Products constitute written warranties under the MMWA insofar as they "relate[]

5  to the nature of the material" and make promises and affirmations of fact as to the

6  quality and contents of the product – to wit, that the beverages are "defect free" as

7  alleged in the complaint.  FAC ¶ 76.  15 U.S.C. § 2301(6)(A); *see also generally In re*

8  *McDonald's French Fries Litig.,* 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007) (plaintiff

9  stated MMWA claim for breach of written warranty with respect to McDonald's false

10 description of French fries as "free of milk, wheat, and gluten."); *Wolph v. Acer Am.*

11 *Corp.*, 2009 WL 2969467, *3 (N.D. Cal. Sept. 14, 2009) (MMWA express warranty

12 claims upheld, such claims can be based on labels and advertisements).

13       Defendant mischaracterizes *In re Sears, Roebuck & Co.*, 2006 WL

14 1443737 (N.D. Ill. May 17, 2006), in arguing that no warranty exists here

15 because the labels "'are product descriptions' rather than promises that the waters

16 are defect-free, or guarantees of specific performance levels."  Def. MTD at 23:6-

17 8.  In *Sears*, the phrase, "Made in the USA" was "a product description that *does*

18 *not inform* consumers that the tools are defect-free or make *any* representation

19 about performance at a specified level over a specified time."  *Id.* at *4 (emphasis

20 added).  Here, SoBe does in fact inform consumers that its waters are defect-free,

21 *i.e.*, free of synthetic and artificial ingredients and otherwise makes promises of

22 fact, *i.e.*, "all natural."  Of course, the geographic origin of a product is vastly

23 different than the promises Defendants made here as to the nature and quality of

24 the *contents* of the ingredients.  Whereas consumers cannot necessarily rely on

25 the origin of production to confirm a lack of "defect" in the product itself, with

26 food content labeling, on the other hand, consumers can and should rely on

27 representations of the nature and quality of the food to be consumed.

28

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1    Defendants are also incorrect that a temporal element is required to create a

2 warranty under the WWMA. *Cf.* Mot. at 23-24, *with* 15 U.S.C. 2301(6)(A) ("defect free

3 **or** will meet a specified level of performance over a specified period of time")

4 (emphasis added).[14]  Rather, it is enough that Plaintiff has alleged that (i) the warranty

5 statements related to the nature of the product (*i.e.*, that it would be defect free) and that

6 (ii) the class relied on those statements in making their purchases.  15 U.S.C. §

7 2301(6)(A); *see also* 16 C.F.R. § 700.3 at n.1 (noting a written warranty "is *also* created

8 by a written affirmation of fact or a written promise that the product is defect free…")

9 (emphasis added).

10    Defendant also argues that the MMWA claim fails because it did "not promise

11 [sic] refund, repair or replacement if the product fails to meet specification."  Def. MTD

12 at 23-24.  However, § 2301(6) notes that a "warranty" means *either* the written

13 affirmation or promise as to the quality of the product under subsection 2301(6)(A) *or* a

14 promise to refund, repair or replace under subsection 2301(6)(B).  Plaintiff is not

15 relying on the MMWA's second prong, thus the fact that he has not alleged a promised

16 refund, repair or replacement is irrelevant.  Plaintiff's claims are therefore appropriate

17 under § 2301(6)(A).  Finally, *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009,

18 1027-28 (N.D. Ill. 2008), cited by Defendants, is unhelpful because there, the plaintiff

19

---

20 [14] *Skelton v. General Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981), while noting
the temporal requirement was not an issue on appeal, nevertheless engaged in dicta and
21 noted that in that instance, the warranty at issue lacked a temporal scope. *See also
Kelley v. Microsoft Corp.*, 2007 WL 2600841, *4 (W.D. Wash. Sept. 10, 2007). Unlike
22 Plaintiff here who seeks to satisfy another prong of the MMWA's definition, the
plaintiffs in *Kelley* and *Skelton* sought to create a warranty by meeting the "specified
23 level of performance over a specified period of time" and yet either provided no time
period (*Skelton*) or illogically argued the "period of time" for the warranty's coverage
24 was the distribution date for the software (*Kelley*).  Regardless, the warranty's scope on
a beverage, unlike that of an automobile or a computer operating system which can last
25 years, is reasonably implied by the product's expiration date. Thus, even if a temporal
element was mandatory as opposed to an alternative means of satisfying the MMWA,
26 the temporal element is in fact on the label and alleged by inclusion of the label in the
complaint's exhibits. *See* Plaintiff's RJN, Exh. C (copies of labels with expiration
27 dates).  This satisfies the purpose of this limitation in giving a defendant a finite time
for which MMWA liability governs.

28

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1 | failed to meet *any* definitional prong of "written warranty".[15]

2 | ### C.   Plaintiff has Provided Notice and Pleads a MMWA Claim

3 | Defendants' final arguments regarding pre-litigation notice, the $25 jurisdictional

4 | claim amount, and preemption also fail. First, the FAC alleges – and it must be taken as

5 | true at this stage of the proceeding – that Plaintiff provided notice and a reasonably

6 | opportunity to remedy by virtue of the March 12, 2012 letter. FAC ¶ 78; *see also* FAC,

7 | Ex. F (CLRA notice); *Semitekol*, 582 F. Supp. 2d at 1018 (notice argument rejected

8 | since "SAC alleges that "Plaintiffs have met all obligations and preconditions as

9 | provided in the Warranty prior to filing the instant suit."). Even if that were not the

10 | case, however, a lack of notice and opportunity to cure is not fatal to a MMWA cause of

11 | action. *See Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1039 (9th

12 | Cir. 2011) (plaintiff's failure to exhaust dispute settlement procedures before filing

13 | complaint did not deprive court of subject matter jurisdiction). Second, while the FAC

14 | does not specifically allege that Plaintiff's individual claim exceeds $25, he alleges that

15 | he regularly purchased 3 flavors of SoBe Beverage over the last 3-4 years. FAC ¶12. A

16 | reasonable conclusion would be that such regular purchases, over the course of years,

17 | adds up to the minimum $25. *Twombly*, 550 U.S. at 555. Regardless, should the Court

18 | require an explicit pleading of the minimum $25, the complaint could be easily

19 | amended to add that.[16] Finally, there is no preemption as discussed above. *See* Part IV.

20 |

---

21 | [15] Specifically, *Semitekol* only alleged a promise to "supply" mirrors for a motor home.
22 | *Id.* at 1027. He did not allege a promise (a) of fact not kept, (b) that the mirrors were "defect free" when they were not, (c) of a certain quality for the mirrors supplied which
23 | was not kept, (d) to refund, repair or replace the mirrors which was not kept, and/or (d) of a specified level of performance over any particular time period which was not
24 | honored. *Id.* at 1027-28.

25 | [16] *Abraham v. Volkswagen of Am. Inc.*, 795 F.2d 238, 243-245 (2d Cir. 1986) did not dismiss a claim for failing to allege $25, but simply outlined the MMWA's legislative
26 | history. Given that the purpose of §2310(d) was to minimize class actions and their access to federal courts, *see, e.g., Schwiesow v. Winston Furniture Co., Inc.*, 74 F. Supp.
27 | 2d 544, 546 (M.D.N.C. 1999), and that the Class Action Fairness Act of 2005 now mandates most class actions in federal courts, the $25 threshold is arguably irrelevant.

28 | [Footnote continued on next page]

22

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

## VII.  **LEAVE TO AMEND SHOULD BE GRANTED TO CURE ANY DEFICIENCIES**

Although Plaintiff believes he has adequately pled all the requisite elements of his claims and remedies, should the Court find any deficiencies, he respectfully requests leave to amend to address them, especially in light of the inadequate meet and confer pursuant to Local Rule 7-3.  In dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995) (citation omitted).  Leave to amend a complaint is to be liberally granted, especially if it appears the pleading could be cured by the allegation of other facts. *Lopez v. Professional Collection Consultants*, 2011 WL 4964886, at *3 (C.D. Cal. Oct. 19, 2011) (citing *Doe*, 58 F.3d at 497)); *Nickoloff v. Wolpoff & Abramson, L.L.P.*, 511 F. Supp. 2d 1043, 1046 (C.D. Cal. 2007) (citing *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981)).  The Court should grant leave to amend as long as amendment of the pleading does not cause undue delay, bad faith, and futility of the amendment or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

Here, no other complaint has had the benefit of being tested by a motion to dismiss.  If necessary, Plaintiff should be given an opportunity to perfect his allegations.  Nowhere in its moving papers do Defendants allege that an amendment would be motivated by bad faith or dilatory conduct, or result in prejudice to Defendants; indeed, it would not.  Accordingly, and given the wide ranging effects of Defendants' conduct

---

[Footnote continued from previous page]
*Wolph*, 2009 WL 2969467, at *3 (noting MMWA jurisdictional thresholds irrelevant if alternative basis of jurisdiction, *i.e.* CAFA, is found) (collecting cases).

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB

1  and the merits of Plaintiff's claims, if this Court finds that Plaintiff has improperly pled

2  any element of the claims, he respectfully requests that he be given an opportunity to re-

3  plead his claims.

4  **VIII.  CONCLUSION**

5          Based on the foregoing, Plaintiff respectfully requests that the Court deny

6  Defendants' motion to dismiss in its entirety.

7      DATED: April 30, 2012                    Respectfully submitted,
                                                **FINKELSTEIN THOMPSON LLP**
8

9                                               By: /s/ Rosemary M. Rivas
                                                Rosemary M. Rivas
10                                              Danielle A. Stoumbos
                                                100 Bush Street, Suite 1450
11                                              San Francisco, California 94104
                                                Telephone: (415) 398-8700
12                                              Facsimile: (415) 398-8704
13

14                                              *Counsel for Individual and Representative*
15                                              *Plaintiff Charles Hairston*

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEF.'S MOTION TO DISMISS
Case No. 12-cv-01429-JFW-DTB