|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |

CIVIL MINUTES -- GENERAL

Case No.    **CV 12-1429-JFW (DTBx)**                                    Date:  May 18, 2012

Title:    Charles Hairston -v- South Beach Beverage Company, Inc., et al.

**PRESENT:**

HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**    ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT [filed 4/19/12; Docket No. 22]

On April 19, 2012, Defendants South Beach Beverage Company, Inc. ("SoBe") and PepsiCo, Inc. ("PepsiCo") (collectively, "Defendants") filed a Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Motion"). On April 30, 2012, Plaintiff Charles Hairston ("Plaintiff") filed his Opposition. On May 7, 2012, Defendants filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for May 21, 2012 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**

SoBe, a subsidiary of PepsiCo, manufactures a diverse range of beverages, including teas and enhanced waters, that are characterized by exotic flavor combinations and added vitamins. In his First Amended Complaint, Plaintiff alleges that during the last three to four years, he regularly purchased SoBe 0 Calorie Lifewater beverages ("Lifewater"), which are no-calorie, vitamin-enhanced, flavored water drinks.[1] Plaintiff also alleges that he "frequently purchased SoBe Beverages in the county of Riverside, as well as other locations in California, most recently in or

---

[1] Plaintiff alleges that he regularly purchased the MacIntosh Apple Cherry, Strawberry Kiwi Lemonade, and Black Cherry Dragonfruit flavors of Lifewater, but not the B-Energy Strawberry Apricot flavor.

about December 2011 at a Vons supermarket in Corona, California."

On February 21, 2012, Plaintiff filed his Complaint against Defendants. On April 12, 2012, Plaintiff filed his First Amended Complaint, alleging causes of action for: (1) California Consumers Legal Remedies Act – California Civil Code §§ 1750, *et seq.* ("CLRA"); (2) California False Advertising Law – California Business & Professions Code §§ 17500, *et seq.* ("FAL"); (3) California Unfair Competition Law – California Business & Professions Code §§ 17200, *et seq.* ("UCL"); and (4) Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, for Breach of Express Warranty ("MMWA").

In his First Amended Complaint, Plaintiff raises three challenges to Lifewater's labeling, which he claims to have "read and relied on." First, Plaintiff alleges that the "all natural" label is potentially deceptive because Lifewater contains "deceptively labeled ingredients" that are "synthetic or created via chemical processing." Specifically, Plaintiff challenges the use of six ingredients: ascorbic acid, cyanocobalamin, calcium pantothenate, niacinamide, pyrioxine hydrochloride, and xanthan gum.[2] Second, Plaintiff alleges that Lifewater's labels are potentially misleading because the names of various fruits are used to describe the different flavors of Lifewater even though Lifewater does not contain any actual fruit or fruit juice. Plaintiff alleges that the use of various fruit names is likely to deceive consumers into "believing that Defendants' SoBe Beverages are, indeed, 'All Natural.'" Third, Plaintiff alleges that the use of the common vitamin name (*e.g.,* $B_{12}$) on the product labels is misleading because the vitamins added to Lifewater are synthetic or created via chemical processing.

## II.    Legal Standard

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular

---

[2]  The first five ingredients are accepted forms of Vitamins C, $B_{12}$, $B_5$, $B_3$, and $B_6$, respectively. In his First Amended Complaint, Plaintiff acknowledges that xanthan gum is "derived from natural bacterium" and is "used in food products such as beverages as a thickening or stabilizing agent, and as an emulsifier in salad dressings."

misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. Further, "a pleader must identify the individual who made the alleged representation and the content of the alleged representation." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III.  Discussion

####  A.  Plaintiff's Claims Related to Defendants' Use of Various Fruit Names to Describe the Different Flavors of Lifewater and the Use of Common Vitamin Names Are Preempted.

In their Motion, Defendants argue that the claims alleged in Plaintiff's first cause of action for violation of the CRLA, second cause of action for violation of the FAL, and third cause of action for violation of the UCL related to Defendants' use of fruit names to describe the various flavors of Lifewater and their use of common vitamin names are preempted by the express preemption provisions in the Federal Food, Drug, and Cosmetic Act ("FDCA") and by the specific labeling regulations promulgated by the Food and Drug Administration ("FDA"). In his Opposition, Plaintiff appears to concede that these claims are preempted by stating that he "does not challenge

Defendant[s'] labeling of the vitamins, the use of the vitamins in the product, or the fruit names on the label as deceptive on their own." Opposition, 2:17-19. Instead, Plaintiff argues that the "gravamen of Plaintiff's complaint is solely that Defendants' 'all natural' representations are false and misleading . . . because the Products contain ingredients that are synthetic and/or are created via chemical processing." Opposition, 1:6-10.

The Court concludes that Plaintiff's claims related to Defendants' use of the names of various fruits to describe the different flavors of Lifewater are preempted. *See, e.g., Dvora v. General Mills, Inc.*, 2011 WL 1897349 (C.D. Cal. May 6, 2011) (holding that CLRA and UCL claims were preempted where the plaintiff was challenging the use of the words "Blueberry Pomegranate" in labeling a cereal not containing any blueberries or pomegranates because FDA regulations explicitly permit manufacturers "to use the name and images of a fruit on a product's packaging to describe the characterizing flavor of the product even where the product does not contain any of that fruit, or contains no fruit at all"); *McKinnis v. General Mills, Inc.*, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) (holding that use of "Strawberry Kiwi" to designate the flavor of yogurt containing no fruit ingredients was "permissible to demonstrate the 'characterizing flavor' of the product"). The Court also concludes that Plaintiff's claims related to Defendants' use of the common names of vitamins are preempted. *See, e.g.,* 21 C.F.R. § 101.9(c)(8)(v) (recognizing that "Vitamin C" and "Ascorbic acid" are "synonym[s]" that may be used in the alternative in a product's nutritional information labeling); 21 C.F.R. § 101.9(k)(4) (stating that the FDA will consider a food "misbranded" if its "label or labeling represents, suggests, or implies" that "a natural vitamin in food is superior to an added or synthetic vitamin"). In addition, the Court concludes that Plaintiff cannot avoid preemption of these claims by arguing that his claim relates solely to Defendants' "all natural" representations and that he included his fruit name and vitamin name claims only as support for his "all natural" claim. Plaintiff's argument would effectively allow Plaintiff to avoid preemption of those claims, and would undermine the purpose of the federal labeling standards which includes avoiding a patchwork of different state standards. *See, e.g., Ries v. Hornell*, 2011 WL 1299286 (N.D. Cal. Apr. 4, 2011) (holding that while "all natural" claim was not preempted, federal law preempted the related "fruit name" claim where plaintiffs challenged "all natural" labeling as false because of product's FDA-compliant use of fruit names).

Accordingly, Defendants' Motion is **GRANTED**, and because amendment is futile, Plaintiffs' first cause of action for violation of the CLRA, second cause of action for violation of the FAL, and third cause of action for violation fo the UCL are **DISMISSED without leave to amend** to the extent they relate to Defendants' use of various fruit names to describe the different flavors of Lifewater and the use of common vitamin names.

### B.     Plaintiff Cannot State a Claim Under the CLRA, the FAL, or the UCL.

The CLRA, FAL, and UCL, which are the basis of Plaintiff's first, second, and third causes of action, are California consumer protection statutes. The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL makes it unlawful to make or disseminate any statement concerning property or services that is "untrue or misleading." *Id.* § 17500. The CLRA also prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Claims made under these statutes are

governed by the "reasonable consumer" test which focuses on whether "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.2008) (*citing Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995)).

The question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss. *See Williams*, 552 F.3d at 938. However, in certain instances, the Court can properly make this determination and resolve such claims based on its review of the product packaging. *See Brockey v. Moore*, 107 Cal. App.4th 86, 100 (2003) ("the primary evidence in a false advertising case is the advertising itself"). Thus, where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate. *See Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) (dismissing without leave to amend a complaint alleging that "Sugar in the Raw" was deceptive because it was actually processed and not natural sugar); *Werbel v. Pepsico, Inc.*, 2010 WL 2673860 (N.D. Cal. July 2, 2010) (holding that, as a matter of law, no reasonable consumer would be led to believe that "Cap'n Crunch's Crunch Berries" cereal contained real fruit berries despite the use of the word berries in the product); *Sugawara v. Pepsico, Inc.*, 2009 WL 1439115 (E.D. Cal. May 21, 2009) (same); *Videtto v. Kellogg USA*, 2009 WL 1439086 (E.D. Cal., May 21, 2009) (dismissing without leave to amend UCL, FAL and CLRA claims based on allegations that consumers were misled into believing that "Froot Loops" cereal contained "real, nutritious fruit"); *McKinnis v. Kellogg USA*, 2007 WL 4766060 (C.D. Cal., May 21, 2007) (same).

In this case, Plaintiff alleges that the "all natural" labeling on Defendants' products is potentially deceptive because the product contains "deceptively labeled ingredients" that are "synthetic or created via chemical processing." However, Plaintiff cannot state a claim under the CLRA, FAL, or UCL regarding Defendants' allegedly deceptive "all natural" labeling because once the preempted statements regarding fruit names and vitamin labeling are removed, Plaintiff's claim is based on a single out-of-context phrase found in one component of Lifewater's label. The Court concludes that Plaintiff's selective interpretation of individual words or phrases from a product's labeling cannot support a CLRA, FAL, or UCL claim. *See, e.g., Carrea v. Dreyer's Grand Ice Cream*, 2012 WL 1131526 (9th Cir. Apr. 5, 2012) (affirming dismissal with prejudice of CLRA, FAL, and UCL claims and rejecting the plaintiff's attempt to interpret words on a product's label out of context). Lifewater's label does not simply state that it is "all natural" without elaboration or explanation. Instead, the "all natural" language is immediately followed by the additional statement "with vitamins" or "with B vitamins."[3] Lifewater does not use the "all natural" language in a vacuum,

---

[3] In his Opposition, Plaintiff also argues that the "addition of 'with vitamins' in small print under the 'all natural' claim does not alert a reasonable consumer" as to the contents of the drink. However, the Ninth Circuit rejected this argument when it affirmed the dismissal of a deception claim where the plaintiff alleged "that members of the public would be deceived" because "it is likely that the reader will review the larger print and ignore the qualifying language in small print." *Freeman v. Time, Inc.* 68 F.3d 285, 289 (9th Cir. 1995). The Ninth Circuit found that "[n]one of the qualifying language is hidden or unreadably small." *Id.* Similarly, in this case, the "with vitamins" language appears immediately below the challenged "all natural" language and neither phrase is hidden or written in an unreadably small print.

and, thus, it will be impossible for Plaintiff to allege how the "all natural" language is deceptive without relying on the preempted statements regarding fruit names and vitamins.

In addition, the Court concludes that no reasonable consumer would read the "all natural" language as modifying the "with vitamins" language and believe that the added vitamins are suppose to be "all natural vitamins." Moreover, to the extent there is any ambiguity, it is clarified by the detailed information contained in the ingredient list, which explains the exact contents of Lifewater.[4] *Freeman,* 68 F.3d at 287 ("Any ambiguity that [plaintiff] would read into any particular statement is dispelled by the promotion as a whole"); *see also Rooney*, 2012 WL 1512106 (holding that no reasonable consumer could be deceived by the label "Sugar in the Raw" because the package stated in several places that the sugar was turbinado-sugar (a processed sugar)). As the Ninth Circuit held in *Williams v. Gerber*, "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging." 552 F.3d 934, 939-40 (9th Cir. 2008). In this case, the ingredient list is consistent with the front label statement of "all natural with vitamins." The ingredient list is also consistent with the statement "nutrient enhanced hydration beverage," the fact that Lifewater is a flavored water beverage and not a juice, and with the product name "0 Calorie Lifewater."

Accordingly the Court concludes that the challenge to the "all natural" language on Defendants' Lifewater is not deceptive as a matter of law. As a result, Defendants' Motion is **GRANTED** and, because amendment is futile, Plaintiffs' first cause of action for violation of the CLRA, second cause of action for violation of the FAL, and third cause of action for violation fo the UCL are **DISMISSED without leave to amend**.[5]

### C. Plaintiff Cannot State a Claim for Breach of Express Warranty Under the MMWA.

In his fourth cause of action, Plaintiff alleges a claim for breach of express warranty under the MMWA based on his allegation that "Defendants advertised and sold their waters with specific representations of facts which guaranteed certain qualities." Opposition, 18:5-6. However, Plaintiff cannot state a claim under the MMWA because the MMWA is expressly "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d); *see also Kanter v. Warner-Lambert Company*, 99 Cal. App. 4th 780, 797 (2002) (holding

---

[4] In fact, Plaintiff conceded in his original Complaint that "[u]pon scrutiny of the ingredients listed on the back of the bottle . . . under the Nutrition Facts Box, it is clear that the SoBe Beverages do not contain juices of any of the fruits listed on the front of the labels."

[5] In addition, Plaintiff "cannot expand the scope of his claims to include a product he did not purchase," such as the B-Energy Strawberry Apricot Lifewater, because Article III and "[t]he statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations." *Johns v. Bayer Corp.*, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010); *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380 (N.D. Cal. Jan 10, 2011) (holding that the plaintiff did not have standing to pursue UCL, FAL, and CLRA claims as to products he never purchased), *aff'd on other grounds,* 2012 WL 1131526 (9th Cir. Apr. 5, 2012).

that the MMWA did not apply because, among other reasons, "the FDCA and its implementing regulations govern the labeling at issue"). In this case, as discussed above, the FDCA and FDA labeling regulations govern the Lifewater labeling challenged by Plaintiff. *See* 21 U.S.C. §§ 371 and 393(b)(2)(A).

In addition, even if the FDCA and FDA labeling regulations did not make the MMWA inapplicable, Plaintiff has failed to allege sufficient facts to establish that the statements on the Lifewater label created a "written warranty" within the meaning of the MMWA. The MMWA narrowly defines "written warranty" as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and ***affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time***, or
>
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product ***to refund, repair, replace, or take other remedial action with respect to such product*** in the event that such product fails to meet the specifications set forth in the undertaking.

15 U.S.C. § 2301(6) (emphasis added).

In this case, the Lifewater label fails to meet the definition of "written warranty" under Section 2301(6)(A) of the MMWA because the label neither promises a defect-free product, nor guarantees a level of performance over a specific time period. The challenged statements – "all natural with vitamins" and the names of various Lifewater flavors – are "product descriptions" rather than promises that Lifewater is defect-free, or guarantees of specific performance levels. *See, e.g., In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2006 WL 1443737 (N.D. Ill. May 17, 2006) (dismissing MMWA claim because "Made in USA" is a "product description," not a promise of performance). However, even if the statements could somehow be construed as promises or guarantees, they clearly do not "specify a level of performance over a specified period of time" and, thus, Plaintiff cannot state a claim under the MMWA. *See, e.g., Skelton v. GM Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("A product information disclosure without a specified time period to which the disclosure relates is . . . not a written warranty."); *Kelley v. Microsoft Corp.*, 2007 WL 2600841 (W.D. Wash. Sept. 10, 2007) (dismissing MMWA claim because "Windows Vista Capable" stickers lack "temporal element" required to constitute a warranty). In addition, because Lifewater beverages will be consumed immediately and not used repeatedly over time, it would be impossible for Plaintiff to amend his First Amended Complaint to allege such a temporal element.

Moreover, the Lifewater label fails to satisfy the definition of "written warranty" under Section 2301(6)(B) of the MMWA because it does not promise refund, repair, or replacement if the product fails to meet specifications. *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1027-28 (N.D. Ill. 2008) (rejecting MMWA claim where no promise of refund or repair).

Accordingly, Defendants' Motion is **GRANTED**, and because amendment is futile, Plaintiff's fourth cause of action for breach of express warranty under the MMWA is **DISMISSED without leave to amend**

## IV.     Conclusion

For all the foregoing reasons, Defendant's Motion is **GRANTED**.  Plaintiff's First Amended Complaint is **DISMISSED without leave to amend**, and this action is **DISMISSED with prejudice**.

IT IS SO ORDERED.